64 So.2d 293 (1953)
WEST COAST HOSPITAL ASS'N
v.
HOARE.
Supreme Court of Florida, en Banc.
April 10, 1953.
*294 Morris E. White and William A. Gillen of the firm of Fowler, White, Gillen, Yancey & Humkey, Tampa, and Alfred P. Marshall of the firm of Marshall & Rives, Clearwater, for petitioner.
Wolfe, Wightman & Rowe, Clearwater, for respondent.
MATHEWS, Justice.
This suit involves the authority of the petitioner, or of the governing authorities of the petitioner, to grant, withhold or refuse the facilities of its hospital to the respondent as a practicing surgeon, duly admitted to practice his profession in the State of Florida.
The West Coast Hospital Association, the petitioner here, is a non-profit corporation, organized and existing under the provisions of Chapter 617, F.S., F.S.A., and owns and operates the Morton F. Plant Hospital in Clearwater, Florida.
The respondent is a physician, licensed to practice medicine and surgery in the State of Florida, and he resides and practices his profession in Clearwater. Since 1951 the respondent was a regular member of the staff of petitioner's hospital. Prior to October 3, 1951, respondent was granted what is called a "probationary privilege" to perform major surgical operations in the hospital under the supervision of a member of the Surgical Department. On or about said date, this privilege was terminated, or withdrawn, and thereafter he was not permitted to use the facilities of the hospital to perform major surgical operations. In March, 1952, the respondent filed a bill of complaint seeking to enjoin the petitioner from interfering with his use of the facilities of the hospital for the performance of major surgical operations upon his patients.
In the bill of complaint the respondent here alleged that he was a resident and taxpayer of the City of Clearwater; that the petitioner here is a corporation, not for profit, and owns and operates the hospital in question; that the respondent was a member of the petitioner-corporation by reason of having made contributions to its building fund and by pledges to make further contributions; that the hospital is the only hospital in the city and vicinity to service approximately 35,000 people; the City of Clearwater and the County of Pinellas have made contributions to the funds of the petitioner, raised by taxation, and that the public generally has made gifts and contributions to the petitioner for use in constructing, maintaining and operating the hospital; that the public relies upon the hospital for services and that the hospital is a public, or quasi public, entity, and that respondent has the right as a member of the corporation and as a licensed physician and surgeon to use the physical facilities of the hospital in the practice of his profession.
The bill of complaint then alleges in great detail the qualifications of the respondent: that he graduated from the University of Virginia with a degree of Doctor of Medicine; served one year apprenticeship at the United States Naval Hospital, Chelsea, Massachusetts, where he assisted in a number of major surgical operations; spent approximately 18 months on a tour of duty in the Pacific Theatre of Operation during the Japanese-American War, and claims to have performed approximately 200 major surgical operations; he was a resident in surgery, pathology and gynecology; that he passed the oral, written and practical examination and was made a Fellow of the Royal College of Surgeons in Canada; and that he passed the examination of the American Board of Surgery and was made Diplomate of that Board.
A motion to dismiss the bill of complaint was filed and was denied by an order of the Circuit Court. Thereafter a petition for writ of certiorari was filed in this Court to review the order of the Circuit Court denying petitioner's motion to dismiss the bill of complaint. At that time no answer had *295 been filed and the facts with reference to the nature of the hospital, whether private or public, had not been fully developed. This Court denied the petition for writ of certiorari. In due course the petitioner filed a sworn answer. In the answer the question of whether or not the hospital was a private or a public entity, or enterprise, was squarely presented, including the question of whether or not the corporation had taken on a quasi public nature to such an extent that the laws relating to public hospitals should apply. The facts with reference to this question were undisputed. Thereafter the petitioner here filed a motion for a summary final decree with supporting affidavits. The Chancellor denied the motion for a summary final decree. Petition for certiorari was filed in this Court to review the order denying the motion for a summary final decree.
The important question to be determined is whether or not the petitioner, in the operation of the hospital in question, is a private corporation, not for profit, operating a private hospital, or is a public corporation, operating a public hospital.
If the petitioner, in the operation of the hospital, is a public corporation operating a public hospital, then the order denying the motion for summary final decree was correct and the cause should have proceeded to the taking of testimony on the various issues raised as to the qualifications of the respondent, and the action of the petitioner in withholding or denying the use of the physical facilities of the hospital to the respondent in performing major surgical operations upon his patients.
On the other hand, if the petitioner is a private corporation and was operating the hospital as a private hospital, then the order of the Chancellor in denying the motion for summary final decree was error, because the same rules and laws applicable to public hospitals do not apply to private hospitals with reference to the withdrawal, refusal or withholding of permission, or right, to practice surgery in such hospital or to use the physical facilities in such hospital in the performance of major surgical operations.
With reference to the organization, ownership, management and control of the corporation and the hospital, the facts are undisputed. The petitioner was organized as a corporation, not for profit, under the provisions of Chapter 617, F.S., F.S.A. Section 617.01, F.S., F.S.A., among other things, provides that the charter shall set forth the following:
"(2) The general nature of the object of the corporation.
"(3) The qualification of members and the manner of their admission.
* * * * * *
"(6) By what officers the affairs of the corporation are to be managed, and the times at which they will be elected or appointed."
The charter strictly complied with the above provisions and contained the following:
"Second;  The general nature of the corporation, and its object and purpose shall be to construct, establish, maintain and operate a hospital for the care and treatment of persons in need of medical and surgical attention, upon such terms and conditions as to meet, if possible, the expense thereof, but without making profit therefrom, and also to establish and operate on like terms a school for the training of skilled nurses.
"Third:  Any person who shall pay the annual or other dues and charges which may from time to time be fixed by the by-laws, shall become and be a member of the Association. Admission shall upon such payment be granted by vote of the directors or executive committee.
"Sixth:  The affairs and business of the corporation shall be managed by a board of thirteen directors, to be elected by the members at their annual meeting in each year acting through a president, three or more vice-presidents, a secretary, a treasurer and such other officers, chosen by the directors, as they may from ____ to time provide for. When the board of directors *296 is not in session, its powers shall be vested in and exercised by an executive committee, and such other committees as may from time to time be created and appointed. All committees shall be appointed by the board of directors, and the size and duties of each of said committees shall be fixed and may from time to time be changed by said board."
Various committees were organized and appointed under the general supervision of the Board of Directors of the corporation. It is urged on behalf of the respondent that the fact that the City of Clearwater has contributed various amounts of taxpayers' money from the very beginning to acquire, operate and enlarge the hospital, together with the fact that the County of Pinellas pays bills rendered to the County Commissioners for services rendered to the indigent of the County, and with the further admitted fact that the petitioner has received various amounts from the United Community Fund and from the public generally, makes the hospital a public hospital.
The annual contributions from the City of Clearwater amount to approximately one percent. of the hospital's total annual operating revenue, and the amount contributed by the City for expansion amounted to only about one per cent. of the cost of such expansion. The County of Pinellas did nothing more than perform its duty in paying bills for the treatment or care of indigent patients who were citizens of Pinellas County. The County contributed nothing toward the building fund or expansion fund.
Such contributions from the City of Clearwater, or the payment of bills by the County of Pinellas, or the contribution by the United Community Fund, or the voluntary contributions from the public generally, to a private non-profit corporation for the purpose of enabling it to own, operate and improve a hospital, do not make such hospital a public institution.
The respondent contends that the fact that he has made a contribution and pledged other contributions to the petitioner not only makes him a member of the corporation but gives to him some kind of a special right, or privilege, as a practicing surgeon to use the physical facilities of the hospital. There is no merit in this contention. The fact that a physician, or surgeon, is a member of the corporation and has made contributions to the corporation gives him no special or vested right or privilege to use the physical facilities of the hospital in the practice of his profession.
This is a private hospital and not a public hospital. In the case of Bryant v. City of Lakeland, 158 Fla. 151, 28 So.2d 106, 110, the hospital in question was a public hospital, owned and operated by the municipality. In that case this Court held:
"Even though the hospital be a public hospital petitioner as a physician had no right (per se) to practice in the hospital, it being a privilege rather than a right."
Even though there was no question that the hospital was a public hospital, this Court said:
"It is not incumbent upon the city to maintain a hospital for the private practice of medicine nor does a physician have a constitutional or statutory right to practice his profession in the City's hospital. See Hayman v. City of Galveston, 273 U.S. 414, 47 S.Ct. 363, 71 L.Ed. 714; Newton v. Board of County Commissioners of County of Weld, 86 Colo. 446, 282 P. 1068; Green v. City of St. Petersburg, 154 Fla. 339, 17 So.2d 517.
"It is well recognized that reasonable rules and regulations may be prescribed concerning qualifications of physicians permitted to practice in public hospitals. Richardson v. City of Miami, 144 Fla. 294, 198 So. 51; Green v. City of St. Petersburg, supra."
The difference between a public and private hospital is now clearly established. In 41 C.J.S., Hospitals, § 1, p. 332, it is stated:
"Private hospital. A private hospital is one founded and maintained by private persons or a corporation, the state or municipality having no voice *297 in the management or control of its property or the formation of rules for its government.
"Public hospital. A hospital created and endowed by the government for general charity is a public corporation; and a public hospital may be defined in general as an institution owned by the public and devoted chiefly to public uses and purposes."
See also 26 Am.Jur. 588, §§ 2 and 3; Annotation in 24 A.L.R.2d 850.
A private hospital may be conducted as a public charity; Levin v. Sinai Hospital, 186 Md. 174, 46 A.2d 298. A private hospital may be supported by appropriations by the State, the county or municipality, without becoming a public hospital; Hughes v. Good Samaritan Hospital, 289 Ky. 123, 158 S.W.2d 159; Levin v. Sinai Hospital, supra.
The management and operation of a private hospital are governed by the rules which apply in the case of a private corporation generally unless modified by statute. 26 Am.Jur., Article on Hospitals and Asylums, § 7, page 592.
The right of a non-profit corporation to manage its affairs by its Board of Directors or other officers specified in its charter is fixed by the statutes and there has been no modification which vests any power or authority in any public officer, board or bureau of the city, county or state to manage such affairs.
With reference to the use of the physical facilities of a private hospital, or the practice by a physician or surgeon in such hospital, the rule is clearly established. In 26 Am.Jur., Article on Hospitals and Asylums, § 9, page 592, it is stated:
"Regulations as to Use or Practice by Physicians and Surgeons.  It seems to be the practically unanimous opinion that private hospitals have the right to exclude licensed physicians from the use of the hospital, and that such exclusion rests within the sound discretion of the managing authorities. * * *"
The case of Natale v. Sisters of Mercy of Council Bluffs, Iowa, 52 N.W.2d 701, 708, is almost identical with this case. In that case the Court said:
"The decisive factor in this action is the fact that the Sisters of Mercy is a private corporation and has operated Mercy Hospital as a private business. The fact that its services and facilities are available to the public does not make it a public corporation, whether for pay or as charity. Being a private corporation, The Sisters of Mercy had the right to make rules and regulations respecting patients, and physicians, and to conduct the hospital as they saw fit, as long as its acts or omissions were not fraudulent, illegal, ultra vires, intentionally, negligently, or otherwise wrongfully injurious to another. In which event it would be liable as any other private corporation, so offending."
See also Van Campen v. Olean General Hospital, 210 App.Div. 204, 205 N.Y.S 554, Id., 239 N.Y. 615, 147 N.E. 219; Piedmont Memorial Hospital v. Guilford County, 218 N.C. 673, 12 S.E.2d 265.
The respondent cites the case of Green v. City of St. Petersburg, 154 Fla. 339, 17 So.2d 517, in support of its contention that the Court has jurisdiction to determine whether the rules or regulations of the hospital are being arbitrarily enforced or applied. In that case there was no question about the hospital being owned and operated by the City of St. Petersburg, and as such, it was a public hospital.
Other cases have been cited to the effect that a public corporation is one engaged in a business affected with a public interest and is, therefore, subject to all the laws, rules and regulations concerning the operation of a public hospital. In the case of Robinson v. Florida Dry Cleaning & Laundry Board, 141 Fla. 899, 194 So. 269, 274, the Court simply held that the laundry business was "affected by a public interest when it reaches such proportions that the interest of the public demands that it be reasonably regulated to conserve the rights of the public * * *."
The respondent has also cited and quoted from the case of Nicholson v. Good Samaritan Hospital, 145 Fla. 360, 199 So. *298 344, 133 A.L.R. 809, to the effect that this Court has recognized the public nature of such a hospital as that involved in this case. The Nicholson case had reference to the liability of a charitable hospital for a tort and had nothing to do with laws, rules or regulations concerning the government of such a hospital.
In the cases of Suwannee County Hospital Corp. v. Golden, Fla., 56 So.2d 911, and Holbrook v. City of Sarasota, Fla., 58 So.2d 862, this Court held that a paying patient in a county hospital was entitled to the same protection and the same redress for wrongs as if the hospital were privately owned and operated. These cases have no bearing upon the question now under consideration.
In the case of State Board of Funeral Directors, etc. v. Cooksey, 147 Fla. 788, 3 So.2d 502, 505, the Court held that the vocation of a "funeral director is one which is affected with public interest" and this being so, the Legislature had authority to enact laws regulating the operation of the undertaking business.
It has long been the established law in this State that when a business is clothed with or affected with the public interest so that it affects the health, safety, morals, comfort and general welfare, such business is subject to reasonable regulation prescribed by the Legislature. There is no contention here that the Legislature has attempted in any manner to regulate the management, control and operation of a private hospital in determining who may and who may not be given the privilege of using the facilities of such hospital for the practice of his profession.
Many businesses and professions, such as, telephone companies, telegraph companies, railroad companies, auto-transportation companies, hotels, restaurants, boarding houses, motels, public utility companies, doctors, lawyers, dentists, pharmacists, real estate operators, and many others are clothed with, or affected with a public interest and may be reasonably regulated under laws duly enacted by the Legislature.
Public or private hospitals were unknown at common law. With a new era and changing conditions, the government and its political subdivisions entered into many new fields of human endeavor and activity, and government and the various subdivisions thereof have undertaken the management, ownership, control and regulation of hospitals and such hospitals are public hospitals, subject to reasonable regulation and control by the governing authorities. Even in the case of public or government hospitals, physicians and surgeons do not have a constitutional right to the unrestricted use of the facilities of such hospitals. In the case of Green v. City of St. Petersburg, supra [154 Fla. 339, 17 So.2d 518], this Court in an opinion by Mr. Justice Terrell, said:
"To contend that being a resident taxpayer and practicing physician of the City gives him a constitutional right to the unrestricted use of the facilities of a hospital provided by the City presents a test of our constitutional theory that we have not heretofore been confronted with. * * *
"* * * When the City furnishes the facilities and takes the risk against their negligent use, it is not too much to require that he who wields the knife does so in the philosophy of the twentieth rather than in that of the eighteenth century."
As distinguished from public or government hospitals, private hospitals had been in existence for a long period of time. They were organized by people with a social conscience and who desired to utilize their means and talents for research and for the relief of suffering humanity. The ownership, control and management of such hospitals were left with those who conceived and organized them or with the managing authorities provided for in the plan of organization and management. Such managing authorities had the power and authority to enlarge and expand such institutions, to carry on research and determine what persons should be granted the privilege of practicing the healing arts in such institutions. It is doubtful if many of the great private hospitals of this country would have been established and would have rendered the service which has been *299 rendered if the managing authorities had been subject to the control or regulation of the government or public officials as to what persons should be granted the privilege of practicing in such institutions.
Without determining the question, it may be that the Legislature has the power and authority to regulate private hospitals, but it has not attempted to do so. There are sufficient fields of endeavors or activities once considered proper for the exercise of free enterprise, where now the government, by specific legislative enactments, is owning, regulating or controlling such endeavors or activities, without the courts invading the legislative field, by adding other endeavors or activities to the ownership, regulation or control of government, political subdivisions or public officials.
In this case the respondent has set forth in great detail his qualifications, experience, practice and that he is a Fellow of the Royal College of Surgeons and a Diplomate of the American Board of Surgery. If this case involved a public hospital, these matters might be of considerable importance, but in view of the conclusion reached that the hospital in question is a private hospital and that the laws, rules and regulations with reference to a public hospital do not apply, the qualifications of the respondent as shown by his experience, practice and membership in medical societies or associations become immaterial to the question involved.
The qualifications of a physician or surgeon may be perfect on paper, but such paper qualifications do not vest in him the right to practice in a private hospital should the managing authorities, in the exercise of their discretion, exclude him or refuse to grant him such right or privilege.
No good purpose could be served by taking voluminous testimony with reference to the qualifications of the respondent or the rules and regulations of the petitioner or the investigations and finding of the petitioner, when the whole controversy may be ended by the determination that the hospital in question is a private hospital and not subject to the laws, rules and regulations governing a public hospital. The case of Levin v. Sinai Hospital, supra [186 Md. 174, 46 A.2d 301], was prosecuted upon the theory that the defendant hospital was a public institution. The Court held that it was a private institution and then said:
"It is not necessary on this appeal to consider the question of the extent of a physician's constitutional right to practice his profession in a public hospital. The powers and duties of the officers of a public institution are regulated by statute or municipal ordinance. The powers and duties of the officers of a private corporation are regulated by its charter, constitution and by-laws. It is a general rule that a court of equity will not interfere with the internal management of a corporation, unless the act complained of is fraudulent, illegal or ultra vires. Williams v. Salisbury Ice Co., 176 Md. 13, 26, 3 A.2d 507; Murray-Baumgartner Surgical Instrument Co. v. Requardt, 180 Md. 245, 23 A.2d 697. We hold that a private hospital has the right to exclude any physician from practicing therein, and such exclusion rests within the sound discretion of the managing authorities. * * *" (Emphasis supplied.)
The petition for certiorari be and the same is hereby granted, and the order denying the motion for summary final decree be and the same is hereby quashed, with directions to enter a decree in accordance with this opinion.
ROBERTS, C.J., and TERRELL, THOMAS, HOBSON and DREW, JJ., concur.
SEBRING, J., not participating.