DAVIDSON ET AL., APPELLANTS, *v.* YOUNGSTOWN HOSPITAL ASSOCIATION, APPELLEE.

(No. 4751—Decided September 16, 1969.)

*Mr. Dennis Haines* and *Messrs. Green, Schiavoni, Murphy & Stevens,* for appellants.

*Mr. Eldon S. Wright* and *Messrs Harrington, Huxley & Smith,* for appellee.

LYNCH, P. J. This appeal concerns the questions of whether Youngstown Hospital Association, a private nonprofit charitable corporation, has the discretionary power to exclude licensed podiatrists from its staff and, in so excluding the plaintiffs, of whether it acted arbitrarily, unreasonably, capriciously and discriminatorily.

At the time of the trial in December, 1966, Section 4731.51, Revised Code (128 Ohio Laws 57, 58), provided as follows:

"The practice of chiropody (podiatry) consists of the treatment of ailments of hand or foot, non-systemic in character, and the treatment of muscles and tendons of the lower leg governing the functions of the foot. It shall also include the making of molds or casts of the foot or any part thereof for the purpose of fitting or prescribing

appliances, devices, or shoes for the correction or relief of foot ailments.

"Certificates authorizing the practice of chiropody (podiatry) permit examinations and diagnosis of the appropriate parts but do not confer the right of operative procedures upon the hands or feet for conditions requiring the use of general anaesthetics. In practice, chiropodists are permitted the use of local antiseptic preparations and local anaesthetics, analgesics, and antibiotics. The use of X-ray or radium for therapeutic purposes is not permitted."

Plaintiffs, appellants herein, are experienced licensed podiatrists. They made application for hospital privileges or staff membership to the Youngstown Hospital Association, which were denied on the basis of the following recommendation of its Credentials Committee:

"The Credentials Committee of the Youngstown Hospital Association recommends that podiatrists not be granted staff privileges. The surgical procedures requested by the podiatrist representative are adequately done by the present surgical staff on both private and clinical patients. On the ward podiatry services are available to patients in the Youngstown Hospital. The staff physicians must request service by written order on the patient's chart. The Joint Commission on Accreditation of Hospitals has stated that a podiatrist must be under the jurisdiction of the Department of Surgery and that the podiatrist be under the direct supervision of a physician. By supervision is meant that during an operation a staff surgeon must be present in the operating room gowned and scrubbed as the responsible person. In other hospitals this is [sic] [has] not worked out since none of the staff surgeons would accept the responsibility for supervision of surgery performed by the podiatrist. A podiatrist is not permitted by law to take care of complications, such as the need for amputation. This would complicate the proper care of the patient with increased liability to the hospital."

The rule of the Joint Commission on Accreditation of Hospitals on hospital privileges of podiatrists is as follows:

"A hospital staff may vote a licensed podiatrist privileges in his specialty. Each hospital staff must evaluate the qualifications of each podiatrist who applies for hospital privileges. The degree of privileges accorded each podiatrist must be determined by his actual professional experience, competence and ability, and his demonstrated character and judgment.

"A licensed physician and surgeon who is a member of the active staff of the hospital must assume responsibility for a patient's total care. The rules and regulations of the hospital must insure that this responsibility will attach at the time of admission and will continue throughout the period of hospitalization. When a surgical procedure is to be performed on a patient by a podiatrist, a physician-surgeon who has been granted surgical privileges by the hospital must assume responsibility for said procedure and the nature and degree of the physician-surgeon's participation is a matter for his determination, subject to the rules of the hospital.

"The podiatrist may write orders within the scope of his license as limited by the applicable statutes and the hospital regulations."

Plaintiffs' petition for a mandatory order to compel the Youngstown Hospital Association to grant them hospital privileges and to admit them to its staff was denied by the trial court, and plaintiffs' appeal is before us on questions of law.

Plaintiffs' first assignment of error is that the trial court erred in finding that the Youngstown Hospital Association, as a private hospital, has the absolute right and discretion to exclude licensed physicians and other medical practitioners from its staff, and that the courts of Ohio have no judicial power to review such action by the association.

The trial court's decision is based on the authority of *State. ex rel. Sams.* v. *Ohio Valley General Hospital Assn.*, 149 W. Va. 229, 140 S. E. 2d 457. See, also, *Shulman* v. *Washington Hospital Center*, 222 F. Supp. 59.

In *Sams* v. *Ohio Valley General Hospital Assn.*, 257 F. Supp. 369, the federal District Judge held that the alloca-

tion of Hill-Burton funds to West Virginia hospitals by the state agency responsible for allocating and administrating federal grants constituted "state action" as to give the federal district court jurisdiction of action by medical doctors who asserted that hospitals' refusal to grant them staff privileges constituted such discrimination as to deprive them of their rights under the due process and equal protection clauses of the Fourteenth Amendment, notwithstanding there was no indication that doctors were Negroes.

The evidence reveals that defendant hospital treats all members of the general public that need care: it receives funds from the federal, state and Mahoning County governments for various purposes, and it obtained funds through public solicitation for building purposes.

We agree with the reasoning in the case of *Greisman v. Newcomb Hospital*, 40 N. J. 389, 192 A. 2d 817, which held that a private nonprofit hospital, which receives part of its funds from public sources and through public solicitation, which receives tax benefits because of its nonprofit and nonprivate aspects and which constitutes a virtual monopoly in the area in which it functioned, is a "private hospital" in the sense that it is nongovernmental, but that it is in no position to claim immunity from public supervision and control because of its private nature. The power of the staff of such a hospital to pass on staff membership applications is a fiduciary power which must be exercised reasonably and for the public good.

One of the issues in the instant case is the need for protecting the public welfare and advancing the interests of justice by reasonably safeguarding an individual's opportunity for earning a livelihood, while not impairing the proper standards and objectives of the hospital.

We agree with court decisions that hold that any rule or regulation of a professional society which has the effect of depriving an individual of an opportunity for earning a livelihood in a profession in which he is duly licensed by the state is subject to judicial scrutiny to determine whether it is arbitrary and unreasonable. *Falcone*

v. *Middlesex County Medical Society*, 34 N. J. 582, 170 A. 2d 791, 89 A. L. R. 2d 952; *Kurk* v. *Medical Society of County of Queens, Inc.*, 46 Misc. 2d 790, 260 N. Y. S. 2d 520.

We also agree with the decision in *Woodard* v. *Porter Hospital, Inc.*, 125 Vt. 419, 217 A. 2d 37, which held that the managing authorities of a private hospital are vested with broad discretionary powers in the selection of its medical and surgical staffs. If the exclusion of a person from its medical or surgical staff is based on the sound and reasonable exercise of discretionary judgment, courts will not intervene, but if the exclusion stems from unreasonable, arbitrary, capricious or discriminatory considerations, equitable relief is available.

Therefore, we find that plaintiffs' first assignment of error has merit.

Plaintiffs' second assignment of error is that the Youngstown Hospital Association acted arbitrarily, unreasonably, capriciously and discriminatorily in refusing hospital privileges to plaintiffs.

Plaintiffs' testimony was that many of their patients have some medical problem such as cardiac, diabetic, asthmatic, or epileptic; that it would be better for their patients if they performed their operative procedures in a hospital where there are better facilities than their offices for recuperation from the surgery they perform, and that there are no hospital facilities in or around the Youngstown area which are available to podiatrists who find it necessary to admit patients to a hospital.

It is generally agreed that the managing authorities of a hospital, whether public or private, under the power to adopt reasonable rules and regulations for the government and operation thereof, in the absence of any statutory restriction, may prescribe the qualifications of physicians and surgeons for admission to practice therein, and may adopt and enforce reasonable regulations concerning the qualifications of practitioners to engage in particular kinds of practice or to perform particular kinds of operations, and also concerning the conditions under which operations or particular kinds of operations or other ser-

vices may be performed. 40 American Jurisprudence 2d 856, Hospitals and Asylums, Section 8; 41 Corpus Juris Secundum 336, Hospitals, Section 5.

In Ohio, a private nonprofit hospital is, under the doctrine of *respondeat superior*, liable for the torts and negligent acts of its employees occurring within the scope of their employment, whether such employees are professional, administrative or medical. *Jones v. Hawkes Hospital of Mt. Carmel*, 175 Ohio St. 503. In Illinois, a private nonprofit hospital was held liable for failure to maintain customary standards of medical care in supervising the work of an orthopedic surgeon and of nurses. *Darling v. Charleston Community Memorial Hospital*, 33 Ill. 2d 326, 211 N. E. 2d 253. Therefore, such hospitals have a legitimate concern that the members of its staff be required to have adequate training and experience before undertaking various procedures of medical treatment. See *Mauer v. Highland Park Hospital Foundation*, 90 Ill App. 2d 409, 232 N. E. 2d 776.

The evidence reveals that Dr. Cooper did not make a written application for hospital privileges, but Dr. Davidson did make such an application. Dr. Davidson's application was processed the same as any other application for staff privileges would be processed, and he was permitted to appear personally before both the Credentials Subcommittee and the Executive Committee of the Medical Staff of the Youngstown Hospital Association.

When Dr. Davidson appeared before the Credentials Subcommittee, he specifically asked surgical privileges to do the following procedures: 1. Osteotomy of Oscalcis; 2. Achilles Lengthening; 3. Unusual tendon transplants; 4. Hallux Valgus; 5. Tarsal and Metatarsal surgery, *i. e.,* Osteomas of these bones; 6. Open reduction of the 5th metatarsal fractures; 7. Neurofibromas of the foot.

According to the hospital's testimony, these surgical procedures came under their department of orthopedic surgery. Dr. George Cook, Chairman of the Section of Orthopedic Surgery, recommended that podiatrists not be granted staff privileges for the following reasons: .

"No. 1 A. A podiatrist is not qualified to do or write a history or physical examination. B. A podiatrist must be under the jurisdiction of the Department of Surgery and a physician must be in attendance when the podiatrist is performing surgery in the hospital on an in patient. 2. A podiatrist is not permitted by law to take care of complications that might arise (example—amputation). 3. Local staff rules in surgery require a surgeon be either board eligible or board certified in his specialty. 4. Surgery by a podiatrist would be limited to local anaesthesia and therefore would not need the service of general anesthesia. Such additional minor surgery would further crowd a bulging hospital surgical schedule unnecessarily. 5. A podiatrist can never be a member of the medical staff—he is not an M. D. 6. Any surgery done by this group can and is already being done both on private and clinic patients by the present staff. 7. Podiatrists already have hospital permission to trim callouses and cut toe nails on in patients, when the same is requested by the staff physician, and the request is written on the patient's chart and signed by the staff man. Recommend that this permission not be enlarged upon."

Dr. Cook testified that only ten percent of the graduates of medical schools on the staff have the necessary qualifications to meet the hospital's requirements for surgery. He further testified that he would not do any of the surgical procedures requested by Dr. Davidson, except neurofibromas of the foot, under a local anesthetic. Under the provisions of Section 4731.51, Revised Code (128 Ohio Laws 57, 58), as set out previously, podiatrists can not perform operative procedures upon the feet for conditions requiring the use of general anesthetics, but are limited to the use of local anesthetics or analgesics.

The evidence reveals further that the initial requirement for membership of the staff is at least one year of internship; that the minimum requirements in general surgery are four years of residency training in surgery after the one-year internship; and that requirements for certification as a specialist in orthopedic surgery, after

one-year internship, are one year of general surgical residency followed by three years of orthopedic residency training. Neither Dr. Davidson nor Dr. Cooper had served either one-year internship in any hospital nor had they had any residency training in surgery.

The testimony of the Youngstown Hospital Association was that it has always allowed podiatrists to be brought to the hospital for their technical skills under the supervision and at the request of the attending physician, who remains responsible for the patient provided such treatment did not involve major surgical procedures or the treatment of major diseases of the foot.

We conclude that we must overrule plaintiffs' second assignment of error, because we cannot find that the Youngstown Hospital Association acted arbitrarily, unreasonably, capriciously or discriminatorily in refusing hospital privileges to plaintiffs. See *Hagan* v. *Osteopathic General Hospital of Rhode Island,* 232 A. 2d 596.

*Judgment affirmed.*

O'NEILL and JOHNSON, JJ., concur.