[No. 42212.  En Banc.  June 1, 1972.]

CHARU M. RAO, *Appellant,* v. BOARD OF COUNTY COMMISSIONERS *et al., Respondents.*

*Johnson & Crane,* by *Ernest F. Crane,* for appellant.

*McCormick, Hoffman, Rees & Arnold,* and *Davies, Pearson, Anderson & Gadbow,* for respondents.

ROSELLINI, J.—The plaintiff sought by this mandamus action to compel the defendant members of the governing board of Lakewood General Hospital to admit her to membership on the medical staff of that hospital.

On motion of the defendants, the trial court, finding in the pleadings and the affidavits before it no denial of the defendants' allegation that the hospital is a private hospital, held, upon the authority of *Group Health Cooperative of Puget Sound v. King County Medical Soc'y,* 39 Wn.2d 586, 237 P.2d 737 (1951), that the defendants had the right to refuse permission to join the hospital staff upon any ground which they deemed sufficient. The action was accordingly dismissed and the plaintiff has appealed.

The rule recited in the case of *Group Health Cooperative of Puget Sound v. King County Medical Soc'y, supra,* is that private hospitals have the right to exclude licensed physicians from the use of their facilities, such exclusion resting within the discretion of the managing authorities. It is the plaintiff's contention that this rule is no longer sound law, and cases are cited which have held that even a private hospital, serving the public, is subject to some court supervision.[1]

There may be merit in the plaintiff's criticism of the broad rule laid down in the *Group Health* case; however,

---

[1] These cases include *Greisman v. Newcomb Hosp.,* 76 N.J. Super. 149, 183 A.2d 878 (1962); *Simkins v. Moses H. Cone Memorial Hosp.,* 323 F.2d 959 (4th Cir. 1963), *cert. denied,* 376 U.S. 938 (1964); *Clark v. Physicians & Surgeons Hosp., Inc.,* 121 So. 2d 752 (La. App. 1960); *Burkhart v. Community Medical Center,* 432 S.W.2d 433 (Ky. App. 1968); and *Sussman v. Overlook Hosp. Ass'n,* 92 N.J. Super. 163, 222 A.2d 530 (1966).

we are not prepared to reconsider that rule until a case comes before us in which the plaintiff offers to show that the discretion lodged in the managing authorities of a private hospital has been abused. This is not such a case.

The limited record before us shows that the plaintiff, a native of India, was educated there and received her medical degree in 1948, that she was licensed to practice medicine in this state in 1961, that she applied for admission to the courtesy staff of the defendant hospital in 1966, that she was admitted to that staff with limited privileges in April 1967, that her competence was questioned a few months later and an investigation was undertaken (with apparent reluctance); and that she left the Tacoma area and went to the east coast shortly after this investigation was begun, leaving some patients' records incomplete and failing to notify the hospital of her departure.

Her appointment to the staff, which under the bylaws of the hospital was subject to annual review, was not renewed. She returned to the area later in the year 1968 and endeavored to reestablish her position on the staff. She was advised by the hospital authorities that she would have to submit a new application for appointment, including current references. The hospital authorities were particularly interested in obtaining an evaluation of the plaintiff's competence from the head of the hospital at which she had been employed or whose facilities she had used immediately prior to her first application to the defendant hospital. This she failed to furnish and, in fact, furnished no satisfactory current reference. Her application was tabled as incomplete. Without offering to complete it, she instituted this action.

The hospital's bylaws provide that an applicant for membership on the professional staff shall be a graduate of a recognized medical or dental school, be legally licensed to practice his profession in the state of Washington, be of good moral character, be possessor of a good reputation regarding his professional ethics, be competent in his respective field, be willing to abide by all rules, regulations, and direc-

tives of the hospital, and be practicing in the community or within a reasonable distance of the hospital.

■ It cannot be seriously questioned that a hospital, whether private or public, has a legitimate interest in the quality of its medical staff. It is in its interest to maintain its accreditation,[2] and its economic success depends in large degree upon its good reputation.

We think it not improbable, too, that the members of the staff of a hospital consider that when they protect the reputation of the hospital of whose staff they are members, they serve their individual reputations as well.

And of course the most vital interest in the quality of medical care received in a hospital is that of the public which it serves. Assuming, without deciding, that private hospital authorities have no legal duty to examine into the qualifications of applicants for admission to the institution's medical staff, they have toward this group at least an ethical duty to do so. We are aware of no legal principle which would prompt this court to say that they have no *right* to pass upon the competence of such applicants. As we recognized in *Group Health Cooperative of Puget Sound v. King County Medical Soc'y, supra,* even the governing bodies of public hospitals are vested with discretion in admitting doctors to staff privileges, and the courts will interfere with the exercise of this discretion only if it is shown to be "arbitrary, tyrannical, or predicated upon a fundamentally wrong basis."

The requirement that an applicant furnish references from other hospitals in which he has practiced and/or other doctors who have knowledge of his competence is one reasonably calculated to aid in the investigation of

---

[2]*See,* however, W. Worthington and L. Silver, *Regulation of Quality of Care in Hospitals: The Need for Change,* 35 Law and Contemporary Problems 305, Vol. 2 (1970), in a symposium, "Health Care." The authors of this article maintain that the standards of accreditation of the Joint Commission on Accreditation of Hospitals, as they apply to quality of medical care, are not very imposing. They describe a need for more effective and uniform regulation of the quality of care offered the public.

qualifications.[3] The plaintiff does not suggest otherwise. Nevertheless, it is her position that she is under no obligation to comply with this requirement but is entitled to treat patients in any hospital of her choosing by virtue of the fact that she holds an unrevoked license to practice medicine in this state. She claims no statutory authority for this position, nor does she cite any rule of the common law which supports it.

A license to practice medicine is granted, under the provisions of RCW 18.71, when certain training requirements are met and an examination is successfully completed. The license, once granted, can be revoked only for unprofessional conduct. RCW 18.72.250.

But we find in the statute no manifestation of a legislative intent to vouch that a successful applicant for a license will be a competent practitioner. The license attests that the applicant has acquired the minimum knowledge necessary to qualify him at the time he takes the test. The state, when it licenses a doctor, does not know and cannot know how diligently that doctor will apply his knowledge or how conscientiously he will continue the learning process, as he must do if he is to give his patients the advantage of the constantly expanding knowledge produced by medical research and experience.

In short, a competent doctor who has been in practice for a time is one who knows more than he knew when he took his licensing examination and who has acquired, through experience if not through additional training, more skill than he possessed at that time. We have no hesitancy in

[3]Many hospitals require more substantial evidence of competence than does the defendant. For example, certification by a specialty board (which establishes standards for training, after the M.D. degree, and for examination—usually both written and practical—of the candidate) is commonly regarded as a proper basis for defining "privileges" of doctors. *See* M. Roemer, *Controlling and Promoting Quality in Medical Care*, 35 Law and Contemporary Problems 284 (1970). Apparently, the defendants grant privileges without requiring proof of board certification. The plaintiff does not claim to be certified in obstetrics and gynecology, and was nevertheless granted privileges in this specialty at the defendant hospital in 1967.

declaring that the governing bodies of hospitals have a right to expect that doctors who use their facilities shall be competent to practice within currently accepted standards, and can reasonably require that references be furnished as evidence that this competence exists.

The plaintiff argues that even a private hospital should not be permitted by the courts to discriminate on the basis of sex or race. If there were the slightest suggestion in the record that the plaintiff's application was tabled because of her sex or race, this proposition would receive our full consideration. Clearly, the denial of an application, based upon such a consideration, would constitute an arbitrary act, and this court would be called upon to reconsider the rule which it announced in *Group Health Cooperative of Puget Sound v. King County Medical Soc'y*, 39 Wn.2d 586, 237 P.2d 737 (1951), exempting from judicial review actions of private hospitals in excluding licensed physicians from the use of their facilities.

We do not lose sight of the fact that the trial court granted the defendants' motion to dismiss upon the pleadings and affidavits. If there were any genuine issue of material fact involved in the case at this juncture, we would be inclined to remand the case for trial and findings, in order to give the plaintiff a chance to prove that the exclusion was arbitrary, tyrannical, or predicated upon a fundamentally wrong basis; and if successful in her proof, to argue further the contention that the rule of *Group Health* should be modified. However, she does not deny that she failed to complete her application, and she does not suggest that she has attempted to rectify this omission. Nor does she assert that she has evidence available which would prove her competence under current standards.

In light of the fact that the plaintiff does not maintain that she can and will comply with the requirements of the hospital and has made no showing that those requirements are unreasonable, she has not made the most rudimentary

case for court intervention. A remand for further proceedings would be a useless act.

The judgment is affirmed.

HAMILTON, C.J., FINLEY, HUNTER, HALE, NEILL, STAFFORD, WRIGHT, and UTTER, JJ., concur.