273 So.2d 430 (1973)
Dr. Milton S. MONYEK, M.D., Appellant,
v.
PARKWAY GENERAL HOSPITAL, INC., a Florida Corporation, et al., Appellees.
No. 72-662.
District Court of Appeal of Florida, Third District.
February 21, 1973.
*431 Spence, Payne & Masington, Miami, for appellant.
Daniel Neal Heller, Miami, for appellees.
Before PEARSON, CHARLES CARROLL and HENDRY, JJ.
HENDRY, Judge.
Appellant plaintiff seeks review of a final summary judgment entered in favor of the appellees holding that appellee hospital was a "private" facility capable of denying staff membership to a physician, the appellant, without a hearing or the necessity of informing the appellant of the reasons for the denial.
The sole issue for our consideration is whether the entry of summary judgment was proper in holding, as a matter of law, that appellee hospital was a "private" institution. The parties have raised no issue with the discretionary right of a private hospital to exclude or deny a physician the privilege to practice therein.[1] We do note that some jurisdictions have departed from this view and have permitted judicial review of such private hospital policies and exclusions.[2] However, the law of this state is settled in this regard and we are in concurrence with non-interference by the courts in the affairs of private organizations. Thus, the sole issue for us to determine is whether, as a matter of law, Parkway General Hospital is a private, public or quasi-public institution.
The facts of the instant case are substantially undisputed. Issue is taken with the trial judge's interpretation of these facts. It is undisputed that Parkway General Hospital is a private corporation for profit under the laws of this state. No contention is made or appears of record that the funds for the construction of the *432 initial facility came from any source other than private donations. The hospital corporation is controlled by a board of directors composed of private physicians and not officers or employees of any federal, state, county or municipal government. Operating expenses for the hospital do not directly come from any federal, county, state or local governmental entity. It does appear that approximately 50% of the patients in the hospital are recipients of Medicare benefits pursuant to 42 U.S.C.A. § 1395 et seq. These benefits are paid to the hospital through an intermediary, Florida Blue Cross-Blue Shield. The record shows that the City of North Miami Beach did enter into a contract to quit-claim certain rights-of-way to the hospital in order for the hospital to build an expansion. Within the contract, resolutions of the city council and quit-claim deed appears a reverter provision whereby the property would revert to the city if construction of the expanded facilities was not commenced within three years. The hospital does maintain an emergency room open to the general public. These essential facts appear uncontradicted of record.
The appellant, a doctor denied privileges by the hospital,[3] contends that the hospital is a public or quasi-public facility and could not deny him admission to practice at their discretion. In support of this position appellant cites three indicia of the public or quasi-public nature of the hospital: (1) the hospital expanded on land given to it by the City of North Miami Beach, the deed to which contained a reverter clause; (2) the hospital exists on federal funds; and (3) the hospital was created to serve the public and public policy demands that a physician be allowed to treat his patients in said hospital.
The Supreme Court of Florida defined the difference between a private and public hospital in the case of West Coast Hospital Ass'n v. Hoare, Fla. 1953, 64 So.2d 293, a case almost identical to the one sub judice. The court stated: (64 So.2d at 296-297)
"... The difference between a public and private hospital is now clearly established. In 41 C.J.S. Hospitals § 1, p. 332 it is stated:
"`Private hospital. A private hospital is one founded and maintained by private persons or a corporation, the state or municipality having no voice in the management or control of its property or the formation of rules for its government.
"`Public hospital. A hospital created and endowed by the government for general charity is a public corporation; and a public hospital may be defined in general as an institution owned by the public and devoted chiefly to public uses and purposes.'"
In the case before us, it appears without contradiction that the hospital was created by private persons as a private profit making corporation and is solely controlled in its operation and policies by private parties, without any intervention by public officials. Thus, initially, the appellee hospital in the instant cause meets the definition of our Supreme Court as a "private" hospital.
The appellant, in the case at bar, contends that since 50% of the patients in the hospital receive Medicare benefits, and since part of the land used by the hospital was donated by the city, subject to a reverter, the complexion of the hospital is now public or quasi-public. We cannot agree with this conclusion as a matter of law. We cannot say that the hospital exists on federal funds solely because a large percentage of the patients' bills are paid indirectly by federal funds through the Medicare program. The Medicare program is not a direct subsidy to the hospital. The hospital does not bill the federal government. The monies are paid to Blue Cross-Blue Shield who then reimburses the hospital. To contend that the hospital is "public" due to coverage of its patients *433 by Medicare would result, realistically, in finding that all hospitals in the country are now "public". We are not of the opinion that this was the intent of the Medicare legislation. We note the language of 42 U.S.C.A. § 1395:
"Nothing in this subchapter shall be construed to authorize any Federal officer or employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided, or over the selection, tenure, or compensation of any officer or employee of any institution, agency, or persons providing health services; or to exercise any supervision or control over the administration or operation of any such institution, agency, or person."
The donation of certain lands to the hospital by the City of North Miami Beach, subject to reverter, does not, in and of itself, establish the hospital as a public or quasi-public institution. As was noted in the Hoare case, supra, the determinative factor in distinguishing between a public and private facility is the element of governmental control. The reverter clause contained in the deed to the hospital imports no element of governmental control of the hospital by the municipality since that provision is only effective if the expansion is not commenced within three years. After commencement of the facility within the time period provided the city's rights to the property are forever terminated, whether or not the facility remains a hospital and notwithstanding the nature of the policies practiced by the hospital.
The third contention of the appellant is that public policy demands the conclusion that the hospital is a public or quasi-public institution. We find this contention to be without merit.
Therefore, for the reasons stated and upon the authorities cited and discussed, the judgment appealed is hereby affirmed.
Affirmed.
NOTES
[1] West Coast Hospital Assoc. v. Hoare, Fla. 1953, 64 So.2d 293; see also Khoury v. Community Memorial Hosp., 203 Va. 236, 123 S.E.2d 533 (1962); Levin v. Sinai Hosp. of Baltimore City, Md. App. 1946, 186 Md. 174, 46 A.2d 298; Mauer v. Highland Park Hosp. Foundation, 90 Ill. App.2d 409, 232 N.E.2d 776 (1967); Moore v. Andalusia Hosp., Inc., 284 Ala. 259, 224 So.2d 617 (1969); Natale v. Sisters of Mercy of Council Bluffs, 243 Iowa 582, 52 N.W.2d 701 (1952); Shulman v. Washington Hosp. Center, D.C. 1963, 222 F. Supp. 59; State ex rel. Sams v. Ohio Valley Gen. Hosp. Assoc., 149 W. Va. 229, 140 S.E.2d 457 (1965); Van Campen v. Olean Gen. Hosp., 210 App.Div. 204, 205 N.Y.S. 554 (1924).
[2] See, Bricker v. Sceva Speare Memorial Hosp., N.H. 1971, 281 A.2d 589; Davidson v. Youngstown Hosp. Assoc., 19 Ohio App.2d 246, 250 N.E.2d 892 (1969); Greisman v. Newcomb Hosp., 40 N.J. 389, 192 A.2d 817 (1963); Silver v. Castle Memorial Hosp., Hawaii 1972, 497 P.2d 564; Willis v. Santa Ana Community Hosp. Assoc., 58 Cal.2d 806, 26 Cal. Rptr. 640, 376 P.2d 568 (1962); Woodard v. Porter Hosp., Inc., 125 Vt. 419, 217 A.2d 37.
[3] At no time have the qualifications of the appellant been at issue.