[No. 1963-1.    Division One.    December 28, 1973.]

CHARUMATI RAO, *Appellant,* v. AUBURN GENERAL HOSPITAL
*et al., Respondents.*

*Johnson & Crane* and *Ernest F. Crane,* for appellant.

*Williams, Lanza, Kastner & Gibbs, Daniel E. Tolfree, Wendells, Froelich & Power*, and *A. T. Wendells*, for respondents.

CALLOW, J.—Charumati Rao graduated from Patna University, a medical school in India. She is now a citizen of the United States; and after arriving in the United States, she studied as a post-graduate student in gynecology-obstetrics at the University of Pennsylvania. Dr. Rao is licensed to practice medicine in the state of Washington. In 1968, she applied for admission to the staff of the Auburn General Hospital. This application was denied on January 16, 1969. She appeals from the granting of a summary judgment which recited that there was no legal basis for liability in the hospital.

Auburn General Hospital claims it is a private charitable corporation. Its governing body is its board of directors. The hospital asserts that it receives no public funds or benefits while the plaintiff states that it does. The hospital by-laws contain the procedures for the granting or denial of staff privileges which include: (1) The application is submitted to the credentials committee, which investigates the qualifications of the applicant; (2) The applicant may apply for temporary staff privileges while the application is being investigated, such privileges being granted in the discretion of the administrator after conferring with the chief of staff; (3) The credentials committee prepares a report for consideration by the executive committee of the medical staff along with its recommendation for denial or acceptance of permanent staff privileges for the applicant; (4) The executive committee considers the report and recommends acceptance or denial to the medical staff; (5) The medical staff upon receipt and consideration of the report and recommendation, transmits its opinion to the governing board which makes the ultimate decision; (6) The governing board communicates its decision to the administrator, who notifies the applicant.

Dr. Rao brought suit against the hospital alleging her education and background, that she is licensed to practice in Washington and in good standing, that the hospital is in a monopolistic position and receives government benefits and exemptions, that she has been refused a fair hearing, and that her application has been rejected wrongfully. She alleges that her application was denied because of her sex, her East Indian descent, her foreign medical education and her outspokenness. She claims the rejection was based upon hearsay evidence and that she was denied an opportunity to face her accusers.

We must confront the following sequence of issues: (1) Is the Auburn General Hospital a private, quasi-public or public hospital? (2) Was the applicant excluded upon an arbitrary, tyrannical or fundamentally wrong basis? (3) Was the applicant excluded because of her race or sex?

■ The law of our state is found in *Group Health Co-operative v. King County Medical Soc'y*, 39 Wn.2d 586, 667, 237 P.2d 737 (1951), which said that, in the discretion of their managing authorities, private hospitals have the right to exclude licensed physicians from the use of their facilities. This premise was reconfirmed in *Rao v. Board of County Comm'rs*, 80 Wn.2d 695, 497 P.2d 591 (1972), which held that both private and public hospitals have an interest in the quality of their medical staffs and the right to pass on applicants to those staffs. The discretion given to hospitals to accept or reject applicants was tempered, however, by the following statement on page 700:

> The plaintiff argues that even a private hospital should not be permitted by the courts to discriminate on the basis of sex or race. If there were the slightest suggestion in the record that the plaintiff's application was tabled because of her sex or race, this proposition would receive our full consideration. Clearly, the denial of an application, based upon such a consideration, would constitute an arbitrary act, and this court would be called upon to reconsider the rule which it announced in *Group Health Cooperative of Puget Sound v. King County Medical Soc'y*, 39 Wn.2d 586, 237 P.2d 737 (1951), exempting

from judicial review actions of private hospitals in excluding licensed physicians from the use of their facilities.

. . . If there were any genuine issue of material fact involved in the case at this juncture, we would be inclined to remand the case for trial and findings, in order to give the plaintiff a chance to prove that the exclusion was arbitrary, tyrannical, or predicated upon a fundamentally wrong basis; and if successful in her proof, to argue further the contention that the rule of *Group Health* should be modified.

We consider first the classification of hospitals as private or public. A public hospital has been defined as one acting in a governmental or proprietary capacity (*Group Health Cooperative v. King County Medical Soc'y, supra*) while a private hospital is one that manages its own affairs free of governmental control. *Shulman v. Washington Hosp. Center,* 319 F. Supp. 252 (D.D.C. 1970); *Shulman v. Washington Hosp. Center,* 222 F. Supp. 59 (D.D.C. 1963). The trend of the decisions is to recognize that hospitals other than being completely private or public may also be classified as quasi-public. The quasi-public status subjects a hospital to the same responsibilities as a public hospital. This concern is brought into play in this case by the diametrically opposed positions of the parties as to the effect of the receipt of governmental grants and of governmental funds as income. A dispute also exists as to the amount of income attributable to governmental sources as compared to the amount received from private sources.

These classifications are defined in *Silver v. Castle Memorial Hosp.,* 53 Hawaii 475, 481, 497 P.2d 564, 569 (1972), which said concerning private hospitals:

A private hospital is founded and maintained by private persons or a corporation, a state or municipality having no voice in the management or control of its property or the formation of rules for its government." . . . The principal distinguishing feature of a hospital that is characterized as being private is that it as an entity has the power to manage its own affairs and is not subject to the direct control of a governmental agency. . . . Such a

private identity is usually evidenced by the fact that under the hospital's charter or corporate powers granted, it has the right to elect its own board of officers and directors. It is this board in whom is placed, either expressly or impliedly, the discretionary power of granting staff privileges.

Continuing, the opinion described a quasi-public hospital thusly on page 481:

It is evident that recently some courts have recognized another hospital classification falling between that of public and private. Such a status can be termed "quasi public" as distinguished from a hospital that is truly private. . . . The "quasi public" status is achieved if what would otherwise be a truly private hospital was constructed with public funds, is presently receiving public benefits or has been sufficiently incorporated into a governmental plan for providing hospital facilities to the public.

(Footnotes omitted.) Finally, the opinion defined a public hospital on page 481 as:

an instrumentality of the state, founded and owned in the public interest, supported by public funds, and governed by those deriving their authority from the state.

Generally, courts have drawn a distinction between private and public hospitals in considering the extent to which courts may review the exclusion of a physician from staff privileges. While some courts have held that the acceptance of government funds in addition to private contributions and income from patient care will not change the private character of a hospital, others have held that such involvement impresses the hospital with a public character. In *Monyek v. Parkway Gen. Hosp., Inc.*, 273 So. 2d 430 (Fla. Dist. Ct. App. 1973), a hospital was declared to be private even though approximately half of the patients received federal government Medicare benefits and part of the land used by the hospital had been donated by the city subject to a reverter. In the *Monyek* case, while the discretionary right of a private hospital to deny staff privileges to physicians was held to be established in Florida, the court noted that judicial review of private hospital policies and exclusions had been allowed in *Willis v. Santa Ana Community*

*Hosp. Ass'n,* 58 Cal. 2d 806, 376 P.2d 568, 26 Cal. Rptr. 640 (1962); *Silver v. Castle Memorial Hosp., supra; Bricker v. Sceva Speare Memorial Hosp.,* 111 N.H. 276, 281 A.2d 589 (1971); *Greisman v. Newcomb Hosp.,* 40 N.J. 389, 192 A.2d 817 (1963); *Davidson v. Youngstown Hosp. Ass'n,* 19 Ohio App. 2d 246, 250 N.E.2d 892 (1969); and *Woodard v. Porter Hosp., Inc.,* 125 Vt. 419, 217 A.2d 37 (1966). *Compare Shulman v. Washington Hosp. Center,* 319 F. Supp. 252 (D.D.C. 1970); *Shulman v. Washington Hosp. Center,* 222 F. Supp. 59 (D.D.C. 1963); *Glass v. Doctors Hosp., Inc.,* 213 Md. 44, 131 A.2d 254 (1957); *Levin v. Sinai Hosp.,* 186 Md. 174, 46 A.2d 298 (1946).

The record before us raises a material issue of fact as to the classification into which the Auburn General Hospital falls. The further issues raised cannot be resolved until a finding is made as to whether the hospital is a private hospital or whether it should be classified as a quasi-public or public hospital.

██ Both private and public hospitals have the discretionary right to exclude an applicant from staff privileges upon any ground the admissions board deems sufficient. *Rao v. Board of County Comm'rs, supra* at 696; *Group Health Cooperative v. King County Medical Soc'y, supra* at 667. The exclusion may rest upon the doctor's lack of proficiency or be based on concern that the personality of the physician will be detrimental to the congenial working of the hospital. The reasons for such exclusions need not be explained by boards of admissions. Thus, it has been held that if a physician has been a disruptive influence on a staff or upon hospital administration the denial of admittance is justified. *Bricker v. Sceva Speare Memorial Hosp., supra; Sussman v. Overlook Hosp. Ass'n,* 92 N.J. Super. 163, 222 A.2d 530 (1966); *Berberian v. Lancaster Osteopathic Hosp. Ass'n,* 395 Pa. 257, 149 A.2d 456 (1959).

However, the exclusion of an applicant from the staff of a *public* hospital will be *reviewable* if the applicant proves that the rejection was based upon race or sex or was arbitrary, tyrannical or predicated upon a fundamentally

wrong basis. *Rao v. Board of County Comm'rs, supra* at 700. *See* Annot., 37 A.L.R.3d 645 (1971).

*Rao v. Board of County Comm'rs* indicates that following the establishment of the status of the hospital the next order of business in this case is for the trial court to establish whether the applicant was excluded from staff privileges because of race or sex. In the event it is established that denial was based on either of those considerations then, whether the hospital be private or public, the *indication* of the previous *Rao* case is that neither basis is a proper ground for exclusion.[1]

When the parties have completed the presentation of evidence on whether race or sex was a basis for the exclusion of the applicant, they must then turn their attention to whether the applicant was excluded arbitrarily, tyrannically or upon a fundamentally wrong basis, if, *but only if,* the hospital previously has been found to be public or quasi-public.[2]

We do not believe the court, by its language in the *Rao* case at page 700, meant to conclude that the actions of private hospitals would be reviewable if they were "arbitrary, tyrannical or predicated upon a fundamentally

---

[1] *Rao* does not state what the legal result should be, but only that "If there were the slightest suggestion in the record that the plaintiff's application was tabled because of her sex or race, this proposition would receive our full consideration." The court went on to state that a denial based on those considerations would be arbitrary and then "this court would be called upon to reconsider" the *Group Health* rule as to private hospitals.

[2] The *Rao* case affirmed the trial court who had dismissed the applicant's claim for admission. The trial court had dismissed the action because (a) a *private* hospital was involved and (b) the *Group Health* rule was that a *private* hospital could refuse staff privileges upon any ground they deemed sufficient. However, the *Rao* opinion on page 700, referring to the private hospital involved in the case stated:

> If there were any genuine issue of material fact involved in the case at this juncture, we would be inclined to remand the case for trial and findings, in order to give the plaintiff a chance to prove that the exclusion was arbitrary, tyrannical, or predicated upon a fundamentally wrong basis; and if successful in her proof, to argue further the contention that the rule of *Group Health* should be modified.

wrong basis." While terms such as "arbitrary, tyrannical or based upon a fundamentally wrong basis" arouse an antipathy towards the possibility of such conduct, the law as it now stands declines to impose upon private hospitals the need to explain their actions (which could be based upon a myriad of valid reasons) or thrust on them the necessity of conducting extensive hearings at their expense.

The pleadings, depositions, affidavits and answers to interrogatories submitted in support of the motion for summary judgment were in conflict and left material issues unresolved. The consideration and rejection of the application was conducted ex parte by the hospital, and no record was available to assist the resolution of those issues. The letter rejecting the application did not state the basis for the rejection. The circumstances require a trial and the entry of findings.

Therefore, we remand the cause to the trial court with directions that the following scenario be followed:

1. A finding must be entered concerning the private or the public or quasi-public status of the hospital.

2. A finding must be entered on whether race or sex was the basis for rejection.

3. In the event the hospital has been found to be public or quasi-public, and neither race nor sex the basis for rejection, then a further finding must be entered on whether the applicant was rejected on an arbitrary, tyrannical or fundamentally wrong basis.

4. Conclusions consistent herewith must be entered following the entry of the findings indicated.

The cause is remanded for trial.

SWANSON, C.J., and JAMES, J., concur.