Dr. Rosemary BRANDT *v.* ST. VINCENT INFIRMARY

85-142                                          701 S.W.2d 103

Supreme Court of Arkansas
Opinion delivered December 16, 1985
[Rehearing denied January 21, 1986.*]

* Purtle, J., not participating.

*Kenneth C. Coffelt* and *Dale Price*, for appellant.

*House, Wallace, Nelson & Jewell, P.A.*, by: *Janice Wegener* and *Thomas B. Staley*, for appellee.

STEELE HAYS, Justice. In this case of first impression we are asked to decide whether a private hospital has the right to set its own policies regarding medical treatment, against an assertion by one of its staff physicians that those policies are arbitrary.

Appellant invoked the jurisdiction of this court pursuant to

Rule 29(1)(a), alleging her constitutional rights were violated by certain hospital restrictions and the Court of Appeals certified the appeal to us on the basis of Rule 29(4)(b).

Appellant, Dr. Rosemary Brandt, is a licensed physician on the medical staff of appellee, St. Vincent Infirmary, specializing in psychiatry. She brought this suit in chancery court claiming the appellee had unreasonably, capriciously and arbitrarily restricted her right to prescribe and administer megadose vitamin therapy and candida antigens. She asked that the hospital be enjoined from such interference. Upon motions by appellee for dismissal under ARCP 12(b)(6) and for summary judgment under ARCP Rule 56, the Chancellor summarily dismissed the case, finding that appellant failed to allege facts upon which relief could be granted and that no justiciable controversy existed.

We agree with the Chancellor with respect to the Rule 12(b)(6) motion, that no cause of action was alleged upon which relief could be granted. That being so, there was no need to consider whether there were issues of material fact relevant to Rule 56. If a complaint fails to allege a cause of action in the first instance, the absence of issues of fact are of no concern. Dismissal under Rule 12(b)(6) should be granted when taking all the facts alleged in the complaint as true, the complainant is not entitled to the relief sought. See *McAllister* v. *Forrest City Street Improvement Dist. No. 11*, 274 Ark. 372, 626 S.W.2d 194 (1981). We conclude the Chancellor correctly held that no cause of action was stated.

Appellant was licensed to practice medicine in Arkansas in 1957, and began specializing in psychiatry in 1966. In 1971 she was certified by the American Board of Psychiatry and Neurology. She has been on the medical staff of appellee hospital since 1978 and has treated patients with allergic modalities and nutritional therapy. Treatments have included the use of megavitamins and candida vaccines, as well as the more traditional methods of psychotherapy. Sometime prior to October 16, 1984, when appellant filed this suit, she was instructed by appellee's Psychiatry Controls Committee to refrain from use of the megavitamins and candida vaccines except to patients with a diagnosed deficiency state or unless administered on an experimental basis. She contends these restrictions are imposed discriminately

by the hospital and by its Psychiatry Controls Committee, which determined that the treatments were without sufficient scientific validation to justify their use other than on an experimental basis. Appellant declined to submit to an experimental protocol, claiming the treatments are not experimental.

Appellant concedes that SVI is a private hospital, which simplifies the issue. Public hospitals are prohibited from acting arbitrarily and capriciously under the Equal Protection Clause and Due Process Clause of the 14th Amendment to the United States Constitution, and under article 2, sections 2 and 3 of the Arkansas Constitution. See *Ware* v. *Benedict*, 225 Ark. 185, 280 S.W.2d 234 (1955). *Anno: Physician, Surgeon-Hospital Exclusion*, 37 ALR3d 645, 669 (1971). And it is generally held that private hospitals are not subject to the same standards as public hospitals, 37 ALR3d 645, 649 (1971).

A private hospital however, will be considered public and subject to judicial review under some circumstances: 1) when the relationship or nexus between the state and the institution is symbiotic in character and the state has so far insinuated itself into a position of interdependence that it must be recognized as a joint participant in the challenged activity—that the nexus is sufficiently close so that the action of the institution may be fairly treated as that of the state itself, *Jackson* v. *Metropolitan Edison Co.*, 419 U.S. 345 (1974); *Burton* v. *Wilmington Parking Authority*, 365 U.S. 715 (1961); and 2) when the institution is dedicated to a public purpose, *Greisman* v. *Newcomb Hospital*, 40 N.J. 389, 192 A.2d 817 (1963) or may exercise some power delegated to it by the state which is traditionally reserved exclusively to the state. *Jackson, supra*; *Flagg Bros., Inc.* v. *Brooks*, 436 U.S. 149 (1978). For a discussion of the basis of state action in such cases, see generally *Bello* v. *South Shore Hospital*, 338 Mass. 770, 429 N.E. 2d 1011 (1981); *Daniels* v. *Twin Oaks Nursing Home*, 692 F.2d 1321 (1982) (Hoffman, J., concurring). In both instances, the courts may review the hospital rule or policy looking for its reasonableness, as though reviewing actions or policies of a public hospital.

The Eighth Circuit Court of Appeals considered the nexus argument in a recent Arkansas case, *Lubin* v. *Crittenden Hospital Assn.*, 713 F.2d 414 (1983). Dr. Lubin was placed on

probation for misconduct as a staff member at the Crittenden Memorial Hospital, a private, nonprofit corporation. He argued the disciplinary action constituted state action and was in violation of his due process rights under the federal constitution, and rights defined under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). Rejecting Lubin's argument, the court stated:

> In order for the Hospital's discipline of Dr. Lubin to be classified as state action there must be a sufficiently close nexus between the challenged action of the Hospital and the state's regulation so that the action of the former may be fairly treated as that of the state itself. *Jackson* v. *Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453-54, 42 L.Ed.2d 477 (1974). "The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum* v. *Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982) (emphasis in original).

> This court applied the nexus test in *Briscoe* v. *Bock, supra*, 540 F.2d 393, a case in which a physician was dismissed by a private, non-profit, tax-exempt hospital. Id. at 394. The hospital in question in *Briscoe* was subject to extensive state regulation and received substantial federal funding. Id. We held that there was "no such nexus between the state's relationship to the Hospital's operation and the dismissal of the plaintiff as to justify attribution of the challenged action of the Hospital to the state." Id. at 396.

The court went on to note the only distinction between the *Lubin* and *Briscoe* cases lay in the fact that the county owned the hospital in *Lubin*, which was not sufficient to establish state action, thus the state was not controlling the activity from which Lubin's complaint arose.

The *Lubin* court held that unless the state or subdivision is directly responsible or indirectly connected with the action of which the plaintiff complains, the action will not be attributed to the state. We note that Crittenden Memorial Hospital received aid under the Hill-Burton Act, as well as from Medicare and Medicaid programs, and was regulated as a health care facility.

Notwithstanding the hospital's participation in these programs, it was not considered to fall within the public function category.

■ A majority of federal circuits which have addressed the question have held that a private hospital's actions are not state action and thus not governed by the 14th Amendment, even though the cases may involve hospitals receiving Hill-Burton funding and Medicare or Medicaid payments, tax exempt status, and which were licensed and regulated by the state. See *Hodge* v. *Paoli Memorial Hosp.*, 576 F.2d 563 (3d Cir. 1978); *Madry* v. *Sorel*, 558 F.2d 303 (5th Cir. 1977), cert. denied, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *Schlein* v. *Milford Hospital, Inc.*, 561 F.2d 427 (2d Cir. 1977); *Briscoe* v. *Bock*, 540 F.2d 392 (8th Cir. 1976); *Watkins* v. *Mercy Medical Center*, 520 F.2d 894 (9th Cir. 1975); *Jackson* v. *Norton-Children's Hospitals, Inc.*, 487 F.2d 502 (6th Cir. 1973), cert. denied, 416 U.S. 1000 (1974); *Ward* v. *St. Anthony Hospital*, 476 F.2d 671 (10th Cir. 1973); *Doe* v. *Bellin Memorial Hospital*, 479 F.2d 757 (7th Cir. 1973).

■ In that light, it is difficult to conceive of a situation where a private hospital will be governed by a reasonableness standard unless the challenged regulation or action is prompted by the state. Here, the appellant offered nothing by way of argument on appeal or in pleadings or affidavits below that the state or any subdivision was in any way responsible for the action she challenges. She does not even meet a threshold requirement of stating or claiming there was state involvement with SVI in any manner whatsoever. Under these circumstances we find no basis for state action and hence no judicial review on the grounds of any nexus between SVI and the state.

The alternative basis for finding judicial review appropriate is one grounded on policy and finding the hospital in a public function or dedicated to a public purpose. The leading case in this area is *Greisman* v. *Newcomb Hosp., supra.* Our research indicates that since that opinion in 1963, only a minority of courts have been persuaded to follow *Greisman* in its reasoning. To that effect, see *Bello* v. *South Shore Hospital, supra; Daniels, supra; Kelly* v. *St. Vincent Hosp.*, 102 N.M. 201, 692 P.2d 1350 (1984); *Hoffman* v. *Garden Hospital*, 115 Mich. App. 773, 321 N.W. 2d 810 (1981); *Kiracofe* v. *Reid Memorial Hospital*, 461 N.E.2d 1134 (Ind. App. 1984) (Ratliff, J., concurring).

■ We also decline to follow *Greisman* on the allegations presented here. All hospitals cater to the health needs of the community, an essential public function, and therefore their policies and practices are of particular concern to the public. Nevertheless, there are sufficient regulations now in effect designed to protect the public in the operation of health care facilities in the state. We see no compelling reason to conclude that a private hospital which is following appropriate state regulations must also be subject to judicial scrutiny as to the reasonableness standard of public hospitals in order to preserve the public interest. Its own medical staff can guarantee adherence to reasonableness more capably than the courts. We think it unnecessary to strip the private hospital of its right to adopt policies of its own choosing simply because the hospital serves an overall public function. And see *Bello, supra*.

■ Appellant insists if we affirm the Chancellor we will be making a public declaration that a physician does not have the right to use those methods of treatment he or she considers beneficial to patients. But that assertion distorts the issue. Nothing in this opinion denies to the appellant the right to use any lawful treatment she deems appropriate, only that she may not use the facilities of the appellee to administer those treatments except in accordance with conditions prescribed by the governing body of that institution.

In *Branch* v. *Hempstead County Memorial Hospital*, 539 F. Supp. 908 (W.D. Ark. 1983) the issue of a physician's rights within a public hospital was addressed. In *Branch*, the court merely required the hospital to afford minimal due process procedures—notice and a hearing. It recognized the principle that great deference should be accorded the decisions of the hospital governing body. 539 F. Supp., at 917-918. And see *Sosg* v. *Bd. of Managers of Val Verde Memorial Hospital*, 437 F.2d 173 (5th Cir. 1971).

In light of that deference accorded even public hospital boards, we believe the Chancellor's order dismissing the complaint should be affirmed.

Affirmed.

PURTLE, J., not participating.

HICKMAN, J., and DUDLEY, J., concurring.

ROBERT H. DUDLEY, Justice, concurring. I concur in affirming the decision of the trial court, but do not agree with the reasoning expressed by the majority in reaching that result.

The majority opinion sets forth the rule that the managing authority of a private hospital can unreasonably and arbitrarily dictate how medicine is to be practiced by a physician or surgeon in that hospital. The better rule would be to allow the managing authority to dictate how a physician or surgeon is to practice medicine only after a reasonable exercise of judgment.

The various interests are not necessarily in opposition. Hospital authorities must be given great managerial discretion in order to elevate hospital standards and provide higher quality medical care. The physician, by being on the hospital staff, carries the imprimatur of the hospital. Understandably, hospital authorities must have some control over the physicians on their staff. At the same time, physicians must be allowed to practice medicine to the best of their ability and should never be unreasonably and arbitrarily restrained from so doing. Physicians and hospitals hold their powers relating to the practice of medicine in trust for the public. The majority undercuts that trust since, in compliance with their opinion, Courts of this State in the future must decline to intervene on behalf of a physician and the public when the managing authority of a private hospital arbitrarily, unreasonably and without medical basis dictates that some particular medical practice must be followed. It is no answer to state, as the majority does, that the doctor can go elsewhere if he does not want to follow the dictates of the hospital authority. "It is common knowledge that a physician or surgeon who is not permitted to practice his profession in a hospital is as a practical matter denied the right to fully practice his profession . . . [because] much of what a physician or surgeon must do can only be performed in a hospital." *Wyatt* v. *Tahoe Forest Hospital District*, 174 Col. App.2d 709, 345 P.2d 93 (1959).

The majority bases its conclusion on the distinction between public and private hospitals. That distinction, however, is rapidly changing. The better view of hospitals, such as the one before us, is that they are quasi-public institutions. The concept is explained in *Silver, M.D.* v. *Castle Memorial Hospital*, 53 Hawaii 475, 497

P.2d, 564, 569 (1972):

At this point it is appropriate that we note the distinction that has been drawn in characterizing a hospital as a public or private institution. It has been recognized that the generally accepted view is that "a public hospital is an instrumentality of the state, founded and owned in the public interest, supported by public funds, and governed by those deriving their authority from the state. A private hospital is founded and maintained by private persons or a corporation, a state or municipality having no voice in the management or control of its property or the formation of rules for its government." Woodard v. Porter Hospital, Inc., 125 Vt. 419, 422, 217 A.2d 37, 39 (1966). The principal distinguishing feature of a hospital that is characterized as being private is that it as an entity has the power to manage its own affairs and is not subject to the direct control of a governmental agency. [citations omitted] Such a private identity is usually evidenced by the fact that under the hospital's charter or corporate powers granted, it has the right to elect its own board of officers and directors. It is this board in whom is placed, either expressly or impliedly, the discretionary power of granting staff privileges.

It is evident that recently some courts have recognized another hospital classification falling between that of public and private. Such a status can be termed "quasi public" as distinguished from a hospital that is truly private. E.g., Sussman v. Overlook Hospital Association, 92 N.J. Super. 163, 168, 222 A.2d 530, 533 (1966), aff'd 95 N.J. Super. 418, 231 A.2d 389 (1967). The "quasi public" status is achieved if what would otherwise be a truly private hospital was constructed with public funds, is presently receiving public benefits or has been sufficiently incorporated into a governmental plan for providing hospital facilities to the public. It is not surprising that courts would be more readily willing to grant judicial review of a private hospital's administrative decision if it could be shown that the hospital in question was not a truly private institution. However, if the proposition that any hospital occupies a fiduciary trust relationship between itself, its

staff and the public it seeks to serve is accepted, then the rationale for any distinction between public, "quasi public" and truly private breaks down and becomes meaningless, especially if the hospital's patients are considered to be of primary concern.

In holding that the actions of appellee hospital in this case are subject to judicial review we do not mean to characterize appellee as anything other than a private hospital. In relation to this point we are in concurrence with the reasoning that "a private nonprofit hospital, which receives part of its funds from public sources and through public solicitation, which receives tax benefits because of its nonprofit and nonprivate aspects and which constitutes a virtual monopoly in the area in which it functioned, is a 'private hospital' in the sense that it is nongovernmental, but that it is in no position to claim immunity from public supervision and control because of its private nature. The power of the staff of such a hospital to pass on staff membership applications is a fiduciary power which must be exercised reasonably and for the public good." Davidson v. Youngstown Hospital Association, 19 Ohio App. 2d 246, 250, 250 N.E.2d 892, 895 (1969).

In the case at bar the record does not disclose whether the hospital actually received Hill-Burton funds, but federal grants for construction costs were made to both public and private hospitals. 42 U.S.C. § 291 (1982). It is common knowledge that Medicare and Medicaid pay the hospital expenses of many patients in both public and private hospitals. St. Vincent's is licensed by the State and sufficiently incorporated into a governmental plan that it and the other established hospitals have a virtual monopoly on hospital rooms in the area. In fact, this very hospital prevented a competing 150 bed hospital from opening. *Statewide Health Coordinating Council, Baptist Medical System, St. Vincent Infirmary, et al. v. General Hospitals of Humana, Inc.*, 280 Ark. 443, 660 S.W.2d 906 (1983). It is basically unfair for the state and federal governments to give this hospital a monopolistic power, and then for this court to rule that the hospital is a totally private corporation.

A fair weighing of the various interests requires that the hospital in this case be termed a quasi-public hospital and, consequently, it must afford physicians or surgeons a fair consideration, or due process, before dictating how they shall practice medicine. The hospital in this case did in fact afford the physician a fair consideration. Thus, I would affirm the case on the basis of a summary judgment instead of on the basis that an arbitrary and unreasonable dictation of the method of medical practice is not actionable.