The Honorable Tim Wooldridge State Representative 100 College Drive Paragould, Arkansas 72450
Dear Representative Wooldridge:
This is in response to your request for an opinion concerning the operation of the Green Acres Nursing Home in Paragould, Arkansas. You note that the facility is governed and operated by a nonprofit corporation, the predecessor of which was the old County Poor Farm. The real property, however, is held in the name of Greene County. The Board of directors of the corporation is made up of representatives of most of the service clubs located in Greene County and various elected public officials. You also note that revenue bonds have been issued in the name of Greene County to assist in the financing of the operation. The nursing home would like to relocate and build a larger facility in Paragould, which would also be a licensed nursing home. You state that in order to make this move, it is necessary that the real property and improvements be sold to retire the revenue bond indebtedness.
Your question with regard to these facts is as follows:
 Does Arkansas Code Ann. Section 14-16-107 permit conveyance of the building and lands, upon approval by a two-thirds vote of the Quorum Court of Greene County and the County Judge, to the nonprofit corporation which operates Green Acres Nursing Home?
The statute cited above provides as follows:
 Whenever a portion of county lands are dedicated for the benefit of any lawfully incorporated, quasi-public, nonprofit, nonsectarian organizations including, but not limited to, medical clinics, that county real property may be sold to any buyer, upon the approval of the county judge and a two-thirds (2/3) vote of the quorum court of the county, without the necessity of soliciting for competitive bids.
It is my opinion that under this statute, the answer to your question is a qualified "yes."
As an initial matter, it must be noted that before any sale of the property takes place, the bondholders must be satisfied. Although it does not appear from your request, in all likelihood, the real property and improvements are pledged to secure repayment of the revenue bonds. If this is the case, no sale may occur without the consent of the trustee and/or the bondholders under the provisions of the trust indenture and surrounding documents. You do not state why it is necessary or desirable to convey the property to the nonprofit corporation in order to retire the bonds. This route may not be taken, however, without concurrence of the bondholders.
Assuming an agreement is reached in this regard, it appears that A.C.A. § 14-16-107 would authorize the "sale" of the property by the county without following the ordinary competitive bidding requirements for the sale of county property. The statute applies to land which is "dedicated" for the benefit of "quasi-public, nonprofit, nonsectarian organizations." You have stated that the organization is a nonprofit corporation, and you also state in your request that it is nonsectarian. The remaining questions are whether the nonprofit corporation is "quasi-public" and whether the land has been "dedicated" for its benefit.
The statute in question refers to "medical clinics" as being within the statute's purview. It can thus be assumed that the legislature intended that these clinics be regarded as "quasi-public" at least for purposes of this statute. Similarly, it is my opinion that a nursing home is, in all likelihood, within the purview of this statute, especially when it is the recipient of public monies through a revenue bond issue for a "public purpose." See generally, Brandt v. St. VincentInfirmary, 287 Ark. 431, 701 S.W.2d 103 (1985) (Dudley, J. concurring) (discussing whether private hospitals are "quasi-public institutions); A.C.A. § 14-164-303(a)(2)(C) and A.C.A. § 14-164-402(2).
The remaining question is whether the county land is "dedicated for the benefit" of the nonprofit corporation. Ordinarily, the legal meaning of the term "dedicate" implies the appropriation of private land to some public use, not the dedication of public land to, for example, a charitable use. See generally,Black's Law Dictionary, (5th Ed. 1979) at 371. It is my opinion therefore, that the term "dedicated" is used in the statute in its common and ordinary sense, rather than in its legal sense. It will always be presumed by the Supreme Court that the legislature intended to use words in their usual and natural meaning (Simmons First Nat. Bank. v. Abbott, 288 Ark. 304, 705 S.W.2d 3
(1986)), unless the words have a fixed and well-known legal signification. Werbe v. Holt, 217 Ark. 198, 229 S.W.2d 225
(1950) and Henderson v. Russell, 267 Ark. 140, 589 S.W.2d 565
(1979). Under this construction the word dedicate is defined as meaning "to set apart to a definite use." Webster's Seventh NewCollegiate Dictionary, (1972) at 215. It is my opinion that the property under this definition has, in all likelihood been "dedicated" for the benefit of the nonprofit corporation.
It is therefore my opinion that the statute is applicable to the situation you describe and does not require competitive bidding upon sale of the property.
A remaining concern, however, is the consideration for the sale.[1] It is my understanding that the county wishes to convey the property with little or no money being paid by the nonprofit corporation. The question of whether this action will withstand constitutional challenge will depend upon the facts. Sales of public property for as little as one dollar, however, have been upheld where there was no fraud, or such gross inadequacy of consideration as will be the equivalent to fraud, and where there is consideration for the sale other than the payment of money, in the form of, for example, "public advantage" or economic benefits to the community. See Chamber of Commercev. Pulaski County, 113 Ark. 438, 170 S.W. 1165 (1914) and Cityof Blytheville v. Parks, 221 Ark. 734, 255 S.W.2d 962 (1953). The sufficiency of the consideration, however, will depend upon the particular facts attendant the transaction.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] Other concerns include the loss of any applicable tax exemption and any possible reversionary interest on transfer of the property.