Mr. Larry Norris, Acting Director Arkansas Department of Correction P.O. Box 8707 Pine Bluff, AR 71611
Dear Mr. Norris:
This is in response to former Director Roger Endell's request for an opinion regarding whether the Consolidated Omnibus Reconciliation Act of 1985 (COBRA) applies to an inmate in an emergency condition, and whether and under what circumstances a facility that receives public funds may refuse to provide general medical care to an individual on the basis of his status as an inmate. It is my opinion that a portion of COBRA entitled the "Emergency Medical Treatment and Active Labor Act" does apply to inmates suffering from emergency medical conditions. With respect to your second question, generally speaking, it is my opinion that a truly public hospital or medical facility, which is constitutionally required to provide access to its services in a non-discriminatory manner, may not lawfully refuse to provide non-emergency care to someone solely on the basis fo his or her status as an inmate.
The "Emergency Medical Treatment and Active Labor Act" was enacted as part of the Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA) in an attempt to prevent hospitals from "dumping" patients in need of emergency care. Pursuant to the Act, a hospital with an emergency department must provide an appropriate medical screening examination for any individual who comes to the hospital requesting treatment, in order to determine whether the individual is suffering from an emergency medical condition. See 42 U.S.C. § 1395dd(a) (1992). If the hospital determines that an emergency medical condition exists, it must provide either necessary stabilizing treatment, as defined in the Act, or for transfer of the individual to another medical facility in accordance with the terms of the Act.42 U.S.C. § 1395dd(b). The Act permits the transfer of individuals who have not been stabilized only in very restrictive circumstances and describes an appropriate transfer in some detail. See42 U.S.C. § 1395dd(c). All Medicare-provider hospitals (as defined in42 U.S.C. § 1395cc) and physicians who violate the Act subject themselves to its stiff civil penalties, which include a fine of not more than $50,000 for each violation (not more than $25,000 for hospitals with less than 100 beds). As the Act applies to any individual who seeks emergency room assistance, it is my opinion that it would apply to inmates who seek such assistance. SeeGatewood v. Washington Healthcare Corp., 933 F.2d 1037 (D.C. Cir. 1991).
With respect to your second question, it has generally been stated that a hospital is under no duty to accept nonemergency patients that it does not desire. See 40 Am. Jur. 2d Hospitalsand Asylums § 12 (1968); 41 C.J.S. Hospitals § 20(c) (1991); and Annotation, Liability of Hospital For Refusal to Admit orTreat Patient, 35 A.L.R.3d 841 (1971). See also, e.g.,Richard v. Adair Hospital Foundation Corp., 566 S.W.2d 791
(Ky.App. 1978); Fabian v. Metzko, 236 Pa. Super. 267, 344 A.2d 569
(1975); Hill v. Ohio County, 468 S.W.2d 306 (Ky. 1970); and LeJuene Road Hospital, Inc. v. Watson, 171 So. 2d 202 (Fla.App. 1965). Although this statement has been made with respect to both public and private hospitals, it is most accurate with respect to private hospitals. In accordance with the above-stated general rule, a private hospital may apparently refuse to treat inmates in nonemergency situations. A public hospital or medical facility, which is prohibited from acting arbitrarily and capriciously under the Equal Protection and Due Process Clauses of the 14th Amendment to the U.S. Constitution and under Article2, sections 2 and 3 of the Arkansas Constitution, must provide access to its services in a nondiscriminatory manner. SeeBrandt v. St. Vincent Infirmary, 287 Ark. 431, 701 S.W.2d 103
(1985). In my opinion, a credible argument could be made that refusing to provide non-emergency care to someone solely on the basis of his or her status as an inmate constitutes unlawful discrimination.
It is important to note that a hospital may receive public funds and still be considered a private hospital. See Brandt v. St.Vincent Infirmary, supra. In Brandt, the Arkansas Supreme Court described the circumstances in which a private hospital will be considered public and subject to judicial review. Stated simply, these are a symbiotic relationship between the institution and the state, or the institution's performance of an exclusive state function. Absent these circumstance, a hospital will be considered private despite its receipt of public funds.Id. Although such a hospital's actions may not be governed by the 14th Amendment, its policies and practices with respect to the admission and treatment of patients must comply with the conditions attached to the public money it receives. An example might be the Hill-Burton Act's requirement that hospitals receiving construction funding thereunder make their facilities available to all persons in their service area "without discrimination on the grounds of race, color, national origin, creed or any other grounds unrelated to an individual's need for the service or the availability of the needed service in the facility." See 42 U.S.C. 291c(e) (1991); 42 C.F.R. § 124.603(a) (1984).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Catherine Templeton.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh