The Honorable Randy Laverty State Senator P.O. Box 165 Jasper, AR 72641
Dear Senator Laverty:
I am writing in response to your request for my opinion on a question relating to the following reported circumstances:
 Searcy County is interested in deeding property it owns to the Searcy County Industrial Development Corporation. The property in question is a county industrial site which is currently unused and has no improvements. The Searcy County Industrial Development Corporation is a non-profit corporation created under authority of Arkansas Code Annotated 15-4-101, et seq. The Corporation has been in existence since its charter was issued by the State on May 16, 1962.
Against this backdrop you have posed the following question:
 Can Searcy County deed this property to the Searcy County Industrial Development Corporation without the property being valued by the assessor, advertised and sold at public auction?
RESPONSE
If by "deed this property" you mean "donate," I believe the answer to this question is clearly "no." Ark. Const. art. 12, §5. By contrast, if you contemplate a sale for adequate consideration, three possibilities exist. First, if the Searcy County Industrial Development Corporation (the "IDC") qualifies as a "quasi-public" organization, and further if the county properly "dedicates" the property "for the benefit of" that "quasi-public" organization — a condition that in all likelihood means that the property must be pledged to the "quasi-public" purpose that organization serves — I believe the county could convey the property to the county without conducting a public sale of the sort described in your question. A.C.A § 14-16-107. Although the consideration for the conveyance would still need to be adequate to pass constitutional muster, I believe under these circumstances "public advantage" might constitute a significant, if not necessarily exclusive, element of consideration. Alternatively, if the county judge deems the property to be "surplus" the county may sell the property to the highest bidder at public auction following notice of the sale by publication. A.C.A § 14-16-106. I interpret the statute just cited as requiring the sale to be for monetary consideration. Finally, if the facts preclude either of the alternatives summarized above, I believe the property may be sold only by sealed bid following an appraisal and public advertisement, and only then if the highest bid is at least ¾ of the property's appraised value. A.C.A §14-16-105.
I am enclosing for your information copies of Ark. Ops. Att'y Gen. Nos. 2002-099 and 2001-003, in which one of my predecessors opined on two separate occasions that it would offend the Arkansas Constitution for a county (in one instance, Searcy County) to gratuitously deed property to an industrial development corporation. As my predecessor noted in Opinion No.2002-099:
 [T]he conveyance at issue would be constitutionally prohibited if it took the form of a straightforward donation of public property to a private, nonprofit corporation. I am enclosing for your information Ark. Op. Att'y Gen. No. 1999-408 [also attached hereto], in which I discuss at length the history of the Arkansas Supreme Court's pronouncements on the issue of municipal [and county] donations to private organizations. As I noted in that opinion, the leading case of Halbert v. Helena-West Helena Industrial Development Corp., 226 Ark. 620, 625-26, 291 S.W.2d 802 (1956) "establishes beyond all question that a municipality cannot contribute to a private, nonprofit corporation regardless of whether the corporation serves a `public purpose.'"[1]
The court in Halbert based this conclusion on Ark. Const. art. 12, § 5, which provides in pertinent part: "No county, city, town or other municipal corporation shall . . . appropriate money for, or loan its credit to, any corporation, association, institution or individual."
 * * *
 As described, the proposed transaction would entail an outright gift of the property by the county to an industrial development corporation — an action the Arkansas Supreme Court clearly declared violative of Ark. Const. art. 12, § 5 in Halbert. 226 Ark. at 625 ("When the Arkansas Legislature allowed the creation of local development corporations as private non-profit corporations, it could not at the same time allow counties or municipalities to grant financial aid to such corporations.").[2] See
discussion in the attached Ark. Op. Att'y Gen. No. 1999-408. As I noted in my response to your previous question, the fact that this gift might indirectly serve a public purpose cannot cure this constitutional infirmity. Simply put, a county may never give public property to a private, nonprofit corporation.
 Having ventured this opinion, I should note that nothing in the constitution precludes the county from contracting to sell the property to a private nonprofit corporation, so long as the contract is supported by adequate consideration and serves a proper governmental end. Cities and counties clearly can enter into contracts that are supported by valid consideration. See Ops. Att'y Gen. No. 98-025 and 97-250; A.C.A. § 14-54-101(2); City of Ft. Smith v. Bates, 260 Ark. 777, 544 S.W.2d 525 (1976); City of Harrison v. Boone County, 238 Ark. 113, 378 S.W.2d 665 (1964). Moreover, this authority includes the power to contract with nonprofit organizations. See Woodruff v. Shockey, 297 Ark. 595, 764 S.W.2d 431
(1989). Such contracts have been upheld as not being in violation of Article 12, § 5. See Arkansas Uniform Linen Supply v. Institutional Services Corp., 287 Ark. 370, 700 S.W.2d 358 (1985).
However, the question remains whether a contract that entailed conveying the property at issue would be subject to the notice and bidding requirements set forth at A.C.A § 14-16-105 (Supp. 2003), which provides, inter alia, that if the county court determines to "sell and cause to be conveyed any real estate" appraised at a value exceeding $1,000 — a condition I assume would apply to the property at issue here — the sale must proceed through sealed bids following public notice and the selling price must be at least ¾ of the appraised value. In my opinion, unless some other law provided an alternative, this provision would apply as a necessary condition of any contract that would involve a conveyance of the real property from the county to the industrial development corporation. Accordingly, although the Arkansas Supreme Court has held as a general proposition that even non-monetary consideration can be adequate if a "public advantage" will result from the contract, City of Blytheville v.Parks, 221 Ark. 734, 255 S.W.2d 962 (1953), A.C.A § 14-16-105
qualifies this principle by providing that the consideration for any conveyance must include at least ¾ of the property's appraised value.
One exception to this rule applies if the county judge determines that the property is "surplus." Specifically, A.C.A § 14-16-106
provides:
 (a) If it is determined by the county judge to be surplus, any personal or real property owned by a county may be sold at public auction to the highest bidder.
 (b)(1) Notice of the public auction shall be published at least once a week for two (2) consecutive weeks in a newspaper having general circulation in the county.
 (2) The notice shall specify the description of the property to be sold and the time and place of the public auction.
Given that an auction necessarily entails seeking bids, I believe the consideration for a sale by auction pursuant to this statute must be monetary, with the condition of public notice giving rise to a presumption that the consideration is adequate. However, no court decision has ever explicitly stated this presumption — or, for that matter, has ever addressed this statute.
Another possible alternative that would avoid the sales restrictions set forth at A.C.A § 14-16-105 might apply under the following conditions:
 Whenever a portion of county lands are dedicated for the benefit of any lawfully incorporated, quasi-public, nonprofit, nonsectarian organizations including, but not limited to, medical clinics, that county real property may be sold to any buyer, upon the approval of the county judge and a two-thirds (2/3) vote of the quorum court of the county, without the necessity of soliciting for competitive bids.
A.C.A § 14-16-107 (Repl. 1998). With respect to the transaction at issue in your request, this statute imposes two conditions that must be met to avoid the application of A.C.A § 14-16-105: (1) the industrial development corporation must qualify as a "quasi-public" organization; and (2) the property to be conveyed must be "dedicated for the benefit of" the industrial development corporation.
With respect to the former of these requirements, neither the Code nor any applicable case law directly addresses the question of whether an industrial development corporation might be characterized as "quasi-public." In Little Rock v. Holland,184 Ark. 381, 384, 42 S.W.2d 383 (1931), the court quoted with approval the following definition of the term "quasi-public corporation":
 In Board of Imp. Sewer Dist. No. 2 v. Moreland, 94 Ark. 380, 127 S.W. 469, 21 Ann. Cas. 957, it was held that a sewer district is a quasi public corporation:" In other words, they are agents of the State to which certain powers and duties of a public nature have been delegated, but which can only exercise the corporate functions which the statute has expressly conferred upon them. Public quasi corporations are created with limited statutory powers, and the general rules, as respects the question of liability to individuals for the negligence of their officers or agents, is that no such liability attaches unless expressly provided by statute." Citing cases.
See also Hartford School District #94 v. Commercial NationalBank, 208 Ark. 984, 990, 188 S.W.2d 638 (1945) (acknowledging that school districts, levee and drainage districts, municipal improvement districts and suburban improvement districts are "quasi-public corporations"); Conway Oil Ice Co. v. Gibson OilCo., 175 Ark. 905, 911, 1 S.W.2d 60 (1927) (acknowledging railroad companies as "quasi-public corporations"); Board ofDirectors, St. Francis Levee District v. Kurn, 98 F.2d 394, 397
(8th Cir. 1938) (road districts, inter alia, are "quasi-public corporations"); Public Citizen v. Department ofJustice, 491 U.S. 440, 462 (1989) (including the National Academy of Sciences among "quasi-public organizations"); Walz v.Tax Commission, 397 U.S. 664, 672 (1970) (noting that the category of "nonprofit, quasi-public corporations" includes "hospitals, libraries, playgrounds, scientific, professional, historical, and patriotic groups"). As the Court noted in Walz
with respect to such groups: "The State has an affirmative policy that considers these groups as beneficial and stabilizing influences in community life and finds this classification [tax exemption] useful, desirable, and in the public interest."397 U.S. at 672.
In Ark. Op. Att'y Gen. No. 92-022, one of my predecessors characterized as "quasi-public" an institution "when it is the recipient of public monies through a revenue bond issue for a `public purpose.'" Citing Brandt v. St. Vincent Infirmary,287 Ark. 431, 701 S.W.2d 103 (1985) (Dudley, J. concurring) (discussing whether private hospitals are "quasi-public" institutions); see also A.C.A. § 14-164-303(a)(2)(B) (defining "capital improvements of a public nature" as including land and rights in land). In this regard, it would appear to be significant that industrial development corporations are expressly authorized by statute to issue bonds, A.C.A § 15-4-514, which are exempt from the Arkansas Securities Act, A.C.A §23-42-101 et seq., see A.C.A § 15-4-515, and the interest on which is exempt from income and inheritance taxation, A.C.A §15-4-524. I am further struck by the fact that among the corporate powers statutorily granted an industrial development corporation is the publicly oriented power "[t]o encourage and promote the agricultural and industrial development of its city, town, or county." A.C.A § 15-4-509(4).
In pursuing the public end of economic development, industrial development corporations are closely monitored by the Department of Economic Development, which is statutorily charged with approving both the articles of incorporation of any local industrial corporation and any issuance of bonds by an industrial development corporation. A.C.A § 15-4-204. Among the additional functions, powers and duties assigned the Department of Economic Development are the following:
 (1) Bring labor, industry, and agriculture into the closest and fullest possible accord for the development of the state's resources and the furtherance of its industry;
 * * *
 (8) Engage in economic development planning to promote the harmonious development of the state, encouraging increased employment, increased personal income, and the preservation of the state's natural beauty and environment in cooperation with other state agencies and with local substate planning and development agencies[.]
The fact that the Department of Economic Development pursues these clearly public ends in part by monitoring and working with industrial development corporations suggests that the latter might well be described as a participant in a "quasi-public" enterprise.
Industrial development corporations likewise often work in close concert with development finance corporations, whose organization and functions are set forth in the Arkansas Development Finance Corporation Act, A.C.A § 15-4-901 et seq. (Supp. 2003 Repl. 1998). The very existence of any such organization is to the Bank Commissioner's determination that "public convenience and necessity require a development finance corporation." A.C.A §15-4-908(2); Andres v. First Ark. Development Finance Corp.,230 Ark. 594, 596, 324 S.W.2d 97 (1959). In Andres, the Arkansas Supreme Court set forth a factual scenario that illustrates the extremely close relationship between industrial development corporations and development finance corporations in promoting the common goal of economic development:
 In the case at bar, the Scott County Industrial Development Corporation, organized under the Act No. 404 of 1955, is desirous of lending money to the Scott County Milling Company, a business corporation — just as the Helena-West Helena Industrial Development Corporation was interested in lending money to the Mohawk Rubber Company in the reported case of Halbert v. Helena Halbert v. Helena[-West Helena Industrial Development Corp., 226 Ark. 620, 291 S.W.2d 802 (1956)] (supra). In order to provide a pool or repository from which the Scott County Industrial Development Corporation, and other Industrial Development Corporations, may obtain funds to loan to business corporations — like Scott County Milling Company in the case at bar, and Mohawk Rubber Company in the reported case — the Legislature, by Act No. 567, authorized the incorporation of finance corporations — like appellee here — which, after first obtaining one million dollars of capital stock from public spirited citizens, will then be able to issue notes and bonds; and from the sale thereof are permitted to make loans to various local industrial development corporations which may qualify with worthy and worthwhile projects.
230 Ark. at 601.
In addressing a constitutional challenge to this arrangement for financing economic development projects, the court offered the following analysis:
 Appellant points to our case of Williams v. Harris, 215 Ark. 928, 224 S.W.2d 9, wherein we held that a municipal corporation could not issue bonds with the proceeds to be used for the construction of a factory building for a private corporation; and appellant says:
 "Since the public, in the form of the municipality and the county, may not aid private enterprise, the question becomes whether a private non profit corporation purporting to act for the public may do so. Act No. 567 requires that in the organization of First Arkansas each Congressional District in the State be represented by stockholders and by a director, and it must be chartered through the State Banking Department after a finding that convenience and necessity require the existence of the corporation.
 "This gives the private corporation some of the characteristics of a representative of the public acting for a public purpose. Appellant takes the position that financing a private business enterprise is not a public purpose, that a municipality or county may not support a private business enterprise, and that a private non profit corporation representing the public may not do so for them."
 This contention is easily answered. In Halbert v. Helena, etc. Industrial Development Corporation, 226 Ark. 620, 291 S.W.2d 802, we had before us Act No. 404 of 1955, and we held that a corporation organized under that Act was a private corporation and that the Cities of Helena and West Helena were in no sense liable for the obligations of the Industrial Development Corporation. That case points to the holding here. The finance corporations authorized by the Act No. 567 are, as we have heretofore said, corporations set up to provide finances that may be loaned to development corporations organized under the Act No. 404 of 1955. The finance corporations are non-profit corporations, but their actions do not make liable the State or any of its subdivisions for the obligations of such corporations.
230 Ark. at 600.
Several conclusions appear warranted based on the foregoing. First, the court is adamant in its conclusion that both industrial development corporations and development finance corporations are private and as such cannot bind the State or its political subdivisions. However, the court further acknowledges the public benefit realized by the operation of such corporations and acknowledges that their joint undertakings proceed from a finding by the State that public "convenience and necessity" warrants their existence. Both varieties of corporation are subject to significant governmental oversight, as well as to significant statutory advantages not available to other types of corporations, including other nonprofit corporations. Given this context, notwithstanding the Code's silence on the issue, I am inclined to opine that industrial development corporations are indeed "quasi-public" in nature. However, legislative or judicial clarification on this issue would be welcome.
To determine that a sale might occur pursuant to A.C.A §14-16-107 without soliciting competitive bids, one must further establish that the county lands have been properly "dedicated for the benefit of" the industrial development corporation. In Ark. Op. Att'y Gen. No. 97-271, one of my predecessors opined that a conveyance for value of county property to Crossett Health Foundation would probably be deemed properly "dedicated" if the deed contained a reversionary clause in favor of Ashley County prohibiting using the property for any purpose not directly related to the delivery of medical care to the general public. In discussing the scope of the term "dedicated," my predecessor observed:
 Opinion 92-022 . . . addresses the meaning of this term. It was concluded that the term is used in its common and ordinary sense as meaning "to set apart to a definite use." Id. at 3, citing Webster['] s.
Whether the property in this particular instance has been so dedicated raises a fact question which cannot be resolved in an opinion from this office. If such a dedication has not occurred, it seems clear that 14-16-107 will not apply. While it is unclear as a legal matter whether the property could now be dedicated to the Foundation and then sold under 14-16-107 without competitive bidding, such an interpretation is, in my opinion, plausible. Research has not, however, disclosed any helpful case law on that question.
 It is my opinion . . . that the inclusion of such a reversionary clause would not impact the fact of "dedication." Indeed, it may be consistent with the required dedication.
 If the property is in fact "dedicated," I believe its sale is permitted under the procedures stated in § 14-16-107, i.e., approval of the county judge and two-thirds vote of the quorum court, with no competitive bids. Please note in this regard that I interpret § 14-16-107 as authorizing the sale of property which is "dedicated" prior to the sale. Thus, in my view, the conveyance to the Foundation is not, in itself, a "dedication." Rather, assuming the property has in fact been dedicated as envisioned under the statute, the sale procedure authorized therein may be followed. I believe § 14-16-107
envisions the continued dedication of the property for the benefit of the stated organization(s), and the reversionary clause in this instance would appear to be consistent therewith.
See also Ark. Op. Att'y Gen. No. 94-168 (opining that a prior dedication of property to the Area Agency on Agency would trigger the operation of A.C.A § 14-16-107 and support a subsequent sale without competitive bidding).
Assuming the conditions just discussed were met in this instance — an assumption whose factual accuracy I am neither authorized nor equipped to test — I believe the county could convey the property at issue without competitive bidding. However, the question would remain whether the county could do so only upon the receipt of fair-market monetary consideration. As noted above, A.C.A § 14-16-105, which sets the conditions for sales made pursuant to sealed competitive bids, provides that the county must realize at least ¾ of the appraised value of any property sold. In Ark. Op. Att'y Gen. No. 96-126, one of my predecessors characterized as "unclear whether or not a sale conducted pursuant to the provisions of A.C.A § 14-16-107 must comply with the price requirement stated in § 105." However, in an earlier opinion, the same predecessor offered what I consider to be a more nuanced analysis of this issue:
 Assuming that 14-16-107 would, in fact, apply in this instance, the consideration for the sale raises a remaining concern. Whether a sale for a "nominal or token price" would withstand constitutional scrutiny will depend upon the particular facts and circumstances surrounding the transaction. As noted in Opinion 92-022, sales of public property for as little as one dollar have been upheld where there was no fraud, and where there was consideration for the sale other than the payment of money, in the form of, for example, "public advantage" or economic benefits to the community. Id. at 3, citing Chamber of Commerce v. Pulaski County, 113 Ark. 438, 170 S.W. 1165 (1914) and City of Blytheville v. Parks, 221 Ark. 734, 255 S.W.2d 962 (1953). The sufficiency of the consideration will, as noted, depend upon the particular facts in each instance.
Ark. Op. Att'y Gen. No. 94-168.
In considering the relationship on this issue between A.C.A §§14-16-105 and -107, I am struck by the fact that the former was originally enacted as Act 193 of 1945, whereas the latter was enacted much later as Act 750 of 1977. Section 14-16-107 further addresses a more particular variety of property than does A.C.A §14-16-107. As noted in Ark. Op. Att'y Gen. No. 97-098: "It is generally held, in the construction of statutes, that a general statute does not apply where there is a specific statute governing a particular subject matter. Donoho v. Donoho,318 Ark. 637, 887 S.W.2d 290 (1994)." Moreover, as noted in Ark. Op. Att'y Gen. No. 2001-102:
 As the court stated in Gazaway v. Greene County Equalization Bd., 314 Ark. 569, 575, 864 S.W.2d 233
(1993): "The phrase expressio unius est exclusio alterius is a fundamental principle of statutory construction that the express designation of one thing may properly be construed to mean the exclusion of another. Chem-Ash, Inc. v. Arkansas Power Light Co., 296 Ark. 83, 751 S.W.2d 353 (1988); Venhaus v. Hale, 281 Ark. 390, 663 S.W.2d 930 (1946).
In my opinion, this principle applies to limit the conditions for the sale of county property pursuant to A.C.A § 14-16-107 to the types of property listed in the statute. In addition, ordinarily the provisions of an act adopted later in time repeal the conflicting provisions of an earlier act. Daniels v. City ofFort Smith, 268 Ark. 157, 594 S.W.2d 238 (1980). Applying these principles of statutory construction, I believe the legislature's silence regarding the issue of monetary consideration in A.C.A §14-16-107 should be read as authorizing the receipt of any variety of adequate consideration, possibly including the "public advantage" discussed above, in exchange for the conveyance of the limited varieties of property set forth in the statute.
Finally, I should note that A.C.A § 14-174-107 specifically authorizes the following contractual relationship between a local government and an industrial development corporation:
 To secure professional economic and industrial development management expertise, local governments are authorized to contract for such services with a community-based not-for-profit economic development corporation. For the purposes of this section, "management" means economic and industrial development planning, marketing, advertising, public relations, supervision and operation of industrial parks or other such properties, negotiation of contracts for the sale or lease of such properties, and such other operating expenses as the governing body may deem necessary, convenient, or appropriate. A "community-based not-for-profit economic development corporation" means an organization formed for the same or similar purposes as those contained in this subchapter, which may be a chamber of commerce, industrial development corporation, or similar corporation.
The proposed parties to the conveyance may want to consult with local counsel to determine whether they could achieve their ends through such a service contract.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
Enclosures
[1] See also City of Little Rock v. Venhaus, 302 Ark. 204,788 S.W.2d 478 (1990) (reversing distribution of illegal exaction residual funds to various charities, not mentioning "public purpose," and directing that the funds be used for municipal purposes).
[2] This proscription has prompted various of my predecessors to question the constitutionality of the City and County Economic Development Grant Authorization Act, A.C.A § 14-173-101 etseq., which purports to authorize the governing bodies of municipalities and counties to make economic development grants to nonprofit corporations. See Ark. Ops. Att'y Gen. Nos.2000-260, 90-279 and 90-243.