OPINION
Appellants Shea and Aleida Zellweger, and Ronald and Janet Dunlap, appeal the decision of the Stark County Court of Common Pleas, Probate Division, which granted judgment in favor of Appellee City of Alliance ("the city") in an action for appropriation of real estate. The relevant facts leading to this appeal are as follows.
In September 1997, representatives of the Alliance Community Hospital commenced meetings with the architectual firm of Kaplan McLaughlin Diaz, regarding plans for new and expanded medical facilities. The firm subsequently prepared a report focusing on three alternatives, one of which contemplated using the existing urban hospital site near the Mount Union College campus, and two of which contemplated moving to other sites. In early 1998, the hospital announced to the public the pending alternatives for expansion.
The City of Alliance took an interest in the hospital's expansion plans, and undertook steps to encourage maintaining the hospital at its current location. Among other concerns, the city worried that the vacant hospital structures would not attract new tenants, and that the centralized accessibility of the facility to urban residents would be lost. City councilman Mike Ogline was appointed to the Board of Hospital Commissioners, and subsequently took extensive steps to review various proposals on the subject and analyze the impact thereof.
Ultimately, the hospital decided to pursue expansion at its present location. After further study, the hospital concluded that approximately twenty acres of land would be needed for its plans. The desired areas included property tracts owned by Appellants Zellwegers and Dunlaps[1].
On October 26, 1998, City Council enacted Ordinance No. 119-98S, which authorized the sale of the city's interest in the hospital land and facilities to the Alliance Community Hospital Association ("ACHA"), a community improvement corporation, for the minimum sum of $4,177,000. City Council designated the Greater Alliance Development Corporation ("GADC") to act as the city's agent in the transaction. The ordinance required that the deed of transfer contain a reversionary interest for the city if ACHA should fail to operate a hospital within the corporate limits of the city or ACHA should fail to expend a sum certain on construction within three years from the date of title conveyance. GACD entered into a sales agreement January 6, 1999, conditioned on the city's successful acquisition of the desired adjoining properties.
On February 1, 1999, City Council adopted resolution No. 15-99, which declared a necessity and an intent to appropriate real estate adjacent to the hospital, including the aforementioned Zellweger and Dunlap properties, for purposes of urban renewal and redevelopment, to create jobs, and specifically for the construction of an expanded health care facility.
On February 16, 1999, City Council adopted resolution No. 21-99, which approved a redevelopment agreement between the city and ACHA. The city transferred its interest in the hospital to ACHA on March 26, 1999, using the GADC as agent.
On August 16, 1999, City Council enacted ordinance No. 118-99, stating that the city had been unsuccessful in obtaining real estate referred to in resolution 15-99, and therefore, authorizing the appropriation of said real estate for the aforementioned purposes.
On August 30, 1999, the city filed a petition in the Stark County Probate Court in order to appropriate the properties at issue[2]. A pretrial was conducted on November 30, 1999. At various times from December 10, 1999 through December 16, 1999, the trial court heard arguments and evidence on the issue of the necessity of the appropriation. Judgment entries were issued on December 21, 1999, finding that a necessity existed for the exercise of eminent domain by appellee and admitting certain exhibits.
The matter of compensation for the appropriation was heard before a jury beginning February 28, 2000. The jury rendered verdicts of $125,000 each in favor of the Zellwegers and the Dunlaps. Judgment entries based on the verdicts were entered on March 3, 2000. Appellants jointly filed a motion to disqualify the trial judge on March 31, 2000, which was denied. The trial judge also issued findings fact and conclusions of law on March 31, 2000.
Both appellants timely filed notices of appeal. Appellants Zellwegers herein raise the following Assignments of Error[3]:
 I. TRIAL COURT ERRED WHEN IT DETERMINED THAT THE CITY HAD COMPLIED WITH THE STATUTORY AND ORDINANCE REQUIREMENT FOR GIVING NOTICE TO THE DEFENDANTS OF ITS INTENT TO APPROPRIATE PROPERTY WHICH CONSTITUTED A DENIAL OF DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16, TO THE OHIO CONSTITUTION.
 II. THE TRIAL COURT ERRED WHEN IT MADE A FINDING OF FACT THAT IF THE HOSPITAL WOULD ABANDON ITS CURRENT CAMPUS THEN THE EXISTING BLIGHTED AREAS TO THE NORTH AND EAST WOULD CREEP TOWARD THE HOSPITAL.
 III. THE TRIAL COURT ERRED WHEN IT MADE [A] CONCLUSION OF LAW THAT CONTAINED CONTRADICTIONS AS TO THE FACT [SIC] AND LAW ON THE ISSUE OF THE EXISTENCE OF URBAN BLIGHT AND URBAN SLUMS.
 IV. THE TRIAL COURT ERRED WHEN IT MADE CONCLUSIONS OF LAW THAT THE CITY COULD ACQUIRE LANDS BY EMINENT DOMAIN FOR ITS HOSPITAL AFTER IT HAD MADE FINDINGS OF FACT THAT THE CITY HAD SOLD ITS INTEREST IN ALL LAND, BUILDINGS, FIXTURES, EQUIPMENT AND PERSONAL PROPERTY IN THE SAME HOSPITAL TO THE ALLIANCE CITIZENS HOSPITAL ASSOCIATION, INC., WHICH CONCLUSIONS WERE CONTRARY TO [THE] OHIO AND FEDERAL CONSTITUTIONS.
 V. THE TRIAL COURT ERRED WHEN IT FOUND THAT WHILE THE ZELLWEGER'S PROPERTY WAS NOT A BLIGHTED OR SLUM AREA, IT WAS STILL SUBJECT TO APPROPRIATIONS FOR TRANSFER TO A PRIVATE CORPORATION FOR PRIVATE REDEVELOPMENT CONTRARY TO THE CONSTITUTION OF OHIO AND DECISIONS OF THE OHIO COURTS.
 VI. THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE CITY HAD BY MEANS OF REVERTER A PRESENT AND FUTURE INTEREST IN THE LAND CONVEYED ON MARCH 26, 1999, TO THE ALLIANCE CITIZENS HEALTH ASSOCIATION, INC., THRU (SIC) THE GREATER ALLIANCE DEVELOPMENT CORPORATION. VII. THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TO RECUSE HIMSELF UPON MOTION QUESTIONING THE IMPARTIALITY OF SUCH TRIAL JUDGE PRIOR TO THE TRIAL ON NECESSITY.
Appellants Dunlaps add the following Assignment of Error, which they place as number six in their table:
 VI. THE TRIAL COURT ERRED WHEN IT DEDUCTED A COMMISSION OF $1,350.00 FOR THE PROBATE COURT UNDER SECTION 2303.20(V), OHIO REVISED CODE, FROM THE JUDGMENT ENTRY OF DISTRIBUTION TO RONALD A. DUNLAP AND JANET L. DUNLAP ON JUNE 14, 2000.
As a preliminary matter, we are compelled to analyze the effect on this appeal of the appellants' acceptance of their compensation monies. Generally, "a satisfaction of judgment renders an appeal from that judgment moot." Spencer v. Kiowa Developing Co., Inc. (Jan. 5, 2000), Summit App. Nos. 19524, 19532, unreported, quoting Blodgett v. Blodgett (1990), 49 Ohio St.3d 243, 245. However, given the nature of eminent domain proceedings, this rule has not been applied to these types of cases, as noted in the following:
 It is now argued that because of the receipt by [landowner] Albert O. Kraemer of the money so paid into court he must be deemed to have accepted the result of the trial below, notwithstanding this proceeding in error, which thereby becomes a moot case and should be dismissed. Under Section 3695, General Code, there is distinct authority given to the board of education upon the entry of a judgment to pay in the money and take possession of the land. While no express authority is set out in the statute for the withdrawal of the money by the property owner, it is clear that it was paid into court for his benefit as an equivalent for his land which is at once taken for public use. No provision is made for payment of any interest upon the money or its investment for his benefit. As he has lost his land, he at once becomes entitled to the money paid as its equivalent. If it should ultimately be determined not to be the proper amount, security given by each of the parties insures the proper final adjustment. The fact that he has received the money so paid in no way prevents his insistence upon any rights he may have or interferes with the prosecution of this error proceeding. ***.
Kraemer v. Board of Ed. of Cincinnati (1917), 8 Ohio App. 428,431.
Kraemer referenced an 1882 ruling by the Ohio Supreme Court, which, although addressing appropriation by a non-governmental railroad under prior Section 6414 of the Revised Statutes, held that "[t]he deposit of money in court, is in legal effect, for the land-owner's use, and belongs to him, as soon as the land becomes the property of the corporation [citation omitted]. And this is so notwithstanding either party may prosecute error and reverse the judgment." Wagner v. Railway Co. (1882),38 Ohio St. 32, 36. In light of the modern statutory language in R.C.163.19, to the effect that "* * * the right to take and use the property appropriated shall not be affected by such review by the appellate courts," we find the rationale of Kraemer permits us to proceed to the merits of the present appeal.
 I.
In their First Assignment of Error, Appellants Zellwegers assert a violation of due process in the method of notice of proceedings which the trial court permitted. We disagree.
Appellants base their argument on R.C. 719.05, which directs notice requirements by municipal corporations in appropriation matters:
 The mayor of a municipal corporation shall, immediately upon the passage of a resolution under section 719.04 of the Revised Code, declaring an intent to appropriate property, for which but one reading is necessary, cause written notice to be given to the owner of, person in possession of, or person having an interest of record in, every piece of property sought to be appropriated, or to his authorized agent. Such notice shall be served by a person designated for the purpose and return made in the manner provided for the service and return of summons in civil actions. If such owner, person, or agent cannot be found, notice shall be given by publication once a week for three consecutive weeks in a newspaper of general circulation in the municipal corporation, and the legislative authority may thereupon pass an ordinance by a two-thirds vote of all members elected thereto, directing such appropriation to proceed.
The Zellwegers argue that the above statute was violated in that notice was not served "immediately," that notice was not served by the proper individual, and that the return of service of the notice was not proper. However, we herein adopt the rationale of Eighth District Court of Appeals, which addressed an analogous argument in Village of Highland Hills v. City of Cleveland (November 2, 1995), Cuyahoga App. No. 68064, unreported:
 Since the trial court is able to cure any defect in the appropriation process, including notice to a party in interest, through the application of R.C. 163.12, thereby protecting the due process rights of the landowner, it cannot be said that non-compliance with the notice provision contained in R.C. 719.05 divests the trial court of subject matter jurisdiction.
Id. at 3.
The notice defects raised by appellants before the trial court were addressed and cured during the proceedings sub judice. Zellwegers' First Assignment of Error is therefore overruled.
 IV.
As Zellwegers' Fourth Assignment of Error (Dunlaps' Third Assignment of Error) is dispositive of many of the remaining issues on appeal, we will address this argument out of sequence. Appellants therein contend that the city's acquisition of the properties in question, via appropriation, was unconstitutional given the prior sale of its interest in the hospital. We disagree.
R.C. 719.01, which directs appropriation of property by municipalities, states in part as follows:
 Any municipal corporation may appropriate, enter upon, and hold real estate within its corporate limits:
* * *
 (E) For hospitals, pesthouses, reformatories, crematories, and cemeteries;
* * *
The statutory authority of a municipality to acquire property against the consent of the owner by eminent domain is limited and pertinent statutes are to be strictly construed. McMechan v. Board of Education of Richland Twp., Belmont County (1952), 157 Ohio St. 241 . The Ohio and United States Constitutions both require that the power of eminent domain be exercised for a public purpose. Section 19, Article I, Ohio Constitution; Fifth and Fourteenth Amendments to the United States Constitution; see, also, City of Huron v. Hanson, (July 28, 2000), Erie App. No. E-99-060, unreported.
Courts have frequently wrestled with the definitions of "public use" and "public purpose". Decades ago, the Ohio Supreme Court aptly noted: "No exact definition of the term `public use' has been agreed upon by the authorities, and of course there is difficulty in formulating an accurate definition that would be comprehensive and satisfactory." Pontiac Imp. Co. v. Board of Com'rs of Cleveland Metropolitan Park Dist. (1922),104 Ohio St. 447, 460. However, the Supreme Court in Pontiac went on to recite Professor Nichols' comprehensive definition of "public use," which included the following: "[T]o serve the public with some necessity or convenience of life which is required by the public as such and which cannot by readily furnished without the aid of some governmental power, whether or not the taking is made by a public body, provided the public may enjoy such service as of right." Id. R.C. 163.09(B) provides that the property owner bears the burden of proving that the legislative body abused its discretion in determining that an appropriation is necessary. An abuse of discretion is shown by evidence that the agency's decision to appropriate was unreasonable, arbitrary, or unconscionable. City of Huron, supra, citing Ohio Power Co. v. Diller (1969), 18 Ohio App.2d 167,176.
Appellants urge us to follow Eighth Walnut Corp. v. Public Library of Cincinnati (1977), 57 Ohio App.2d 137, which refused to allow the City of Cincinnati to appropriate land for a county, as opposed to a city-operated, library under the aegis of R.C. 719.01(H):
 To interpolate this authority into R.C. 719.01(H) would be to find that the defendant city could also appropriate property for transfer to and for the benefit of, say, Harvard University, or any other such private institution, under the grant of appropriation powers "(F)or * * * university sites, and grounds therefor * * *." This obviously was not intended by R.C. 719.01, which enumerates fifteen categories of purposes for which the power of eminent domain may be exercised, all of which involve traditional areas of municipal authority (E.g., improving streets and canals, establishing parks, playgrounds, public offices, prisons, hospitals levees, bridges, sewers, etc.) exercised by the municipality directly for the benefit of its citizens.
Id. at 139-140.
However, we are more inclined to follow the rationale of Berman v. Parker (1954), 348 U.S. 26, addressing a congressional redevelopment plan for areas of the nation's capital. The United States Supreme Court therein stated:
 Once the object is within the authority of Congress, the right to realize it through the exercise of eminent domain is clear. For the power of eminent domain is merely the means to the end. [Citations omitted]. Once the object is within the authority of Congress, the means by which it will be attained is also for Congress to determine. Here one of the means chosen is the use of private enterprise for redevelopment of the area. Appellants argue that this makes the project a taking from one businessman for the benefit of another businessman. But the means of executing the project are for Congress and Congress alone to determine, once the public purpose has been established.
Id. at 33.
Thus, upon review of the record, we find no merit in appellant's assertion that the city's utilization of eminent domain, through the conduit of ACHA, to improve hospital facilities for the good of the Alliance public was an unconstitutional act. It is undisputed that this matter involves a city of well over twenty thousand of residents, host to an institution of higher learning and numerous industries, yet served by a sole acute care hospital facility. Several courts have made reference to the view that " *** where a private hospital is open to the public, uses federal funds and has a virtual monopoly in the area in which it operates, it is still non-governmental, but acts in a fiduciary capacity for the public." Gotsis v. Lorain Community Hospital (1974),46 Ohio App.2d 8, 18, citing Davidson v. Youngstown Hosp. Assn. (1969),19 Ohio App.2d 246, 250 N.E.2d 892; Greisman v. Newcomb Hospital (1963),40 N.J. 389, 192 A.2d 817; and Woodard v. Porter Hospital (1966),125 Vt. 419, 217 A.2d 37. We thus find no merit in appellants' claim that City Council's conclusion to allow for expansion of a vital medical institution, serving the public's needs, exceeded constitutional bounds under these facts.
The Assignment of Error is overruled.
 II, III, V.
In their Second, Third, and Fifth Assignments of Error, (Dunlaps' First, Second, and Fourth), appellants raise various issues pertaining to the existence or nonexistence of urban blight or slum areas. However, based on our holding above, we find that appropriation, as a means of promoting the public purpose of maintaining a hospital in the city, was valid under these circumstances, even in the absence of blight. Any further discussion is therefore merely academic.
The Second, Third, and Fifth Assignments of Error are overruled as moot.
 VI.
In their Sixth Assignment of Error, (Dunlaps' Fifth), appellants challenge the trial court's finding pertaining to the city's reversionary interest in the properties in question. However, based on our reliance on Berman v. Parker, supra, above, the hospital land appropriation via ACHA was found not constitutionally infirm, and said appropriation would not be impacted by the validity or invalidity any reverter interest.
The Sixth Assignment of Error is overruled as moot.
 VII.
In their Seventh Assignment of Error, appellants argue that the trial judge erred in refusing to recuse himself pursuant to appellant's request for disqualification. We disagree.
R.C. 2101.39 directs the method of seeking disqualification of a probate judge on the basis of prejudice:
 If a probate judge allegedly has a bias or prejudice for or against a party or a party's counsel in a proceeding pending before the judge, allegedly otherwise is interested in a proceeding pending before the judge, or allegedly is disqualified to preside in the proceeding and if the bias, prejudice, interest, or disqualification does not permit or require certification of the proceeding to the court of common pleas as provided by section 2101.38 of the Revised Code, any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the supreme court. The affidavit of disqualification shall be filed and decided in accordance with divisions (B) to (E) of section 2701.03
of the Revised Code, and, upon the filing of the affidavit, the provisions of those divisions apply to the affidavit, the proceeding, the judge, and the parties to the proceeding.
The record reveals no indication that appellants filed any affidavit per the above statute. Instead, appellants jointly filed an unsworn motion to request a hearing on "qualification of judge to preside in trial." Moreover, in cases in the courts of common pleas, the Chief Justice of the Supreme Court of Ohio has exclusive jurisdiction to determine a claim that a trial judge is biased or prejudiced. Jones v. Billingham (1995),105 Ohio App.3d 8, 11. Common pleas litigants in this type of situation must bring any challenge to the trial judge's objectivity by way of the procedure set forth in R.C. 2701.03. See In re Baby Boy Eddy (Dec. 6, 1999), Fairfield App. No. 99CA22, unreported, citing In re Miller (July 16, 1999), Montgomery App. No. 17592, unreported, at 2. Since only the Chief Justice or his designee may hear a disqualification matter, a court of appeals is without authority to void the judgment of a trial court because of bias or prejudice of the judge. Beer v. Griffith (1978),54 Ohio St.2d 440, 441-42. We find no reason why this rationale would not apply to a probate court proceeding.
Therefore, we are without jurisdiction to decide the merits of appellant's Seventh Assignment of Error. Appellant's Seventh Assignment of Error is overruled.
 VI (Dunlap)
In their Sixth Assignment of Error, Appellants Dunlaps argue that the trial court erred in deducting a "commission" from the monies distributed to them. We disagree.
Appellant essentially argues that R.C. 2303.20(V), which permits assessment of certain fees by the county clerk of courts, would not apply to a probate judge acting in the capacity of clerk of the probate court under R.C. 2101.11(A)(1). However, R.C. 2101.18 allows the following:
 For services for which compensation is not provided but subject to section 2101.27 of the Revised Code insofar as the probate judge solemnizes marriages, the probate judge shall be allowed the same fees as are allowed the clerk of the court of common pleas for similar services.
We therefore find said commission to be within the discretion allowed the trial judge pursuant to statutory authority.
Dunlap's Sixth Assignment of Error is overruled.
For the reasons stated in the foregoing opinion, the judgments of the Court of Common Pleas, Probate Division, Stark County, Ohio, are hereby affirmed.
Gwin, P.J., concurs. Hoffman, J., concurs separately
 ________ Wise, J.
[1] Documents at the commencemnet of the action asserted that the Dunlaps were vendees under a land installment contract with Anna Sherriff.
[2] The trial court proceedings addressed no less than four parcels and owners, under four different case numbers. The within appeal concerns just the two properties owned respectively by the Zellwegers and the Dunlaps.
[3] Appellants Dunlaps raise identical Assignments of Error as to their properties owned respectively by the Zellwegers and the Dunlaps.